[Crim. No. 44177. Second Dist., Div. Six. Oct. 6, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
HARBOR HUT RESTAURANT, Defendant and Appellant.

**COUNSEL**

Joseph T. Melone and Wright, Peterson & Sanders for Defendant and Appellant.

John K. Van de Kamp, Attorney General, R. H. Connett and Peter W. Van Der Naillen, Deputy Attorneys General, Christopher G. Money, District Attorney, and Robert Rabe, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

**ABBE, J.**—This matter is before us on transfer from the Appellate Department of the San Luis Obispo Superior Court, pursuant to rule 62(a) of the California Rules of Court. ▆▆ We ordered the matter transferred in order to consider the constitutionality of a warrantless inspection conducted by officials of the Department of Fish and Game of the facilities of Harbor Hut Restaurant, a wholesale fish dealer licensed under Fish and Game Code section 8040, subdivision (a).[1] (Unless otherwise specified, all statutory references are to the Fish and Game Code.)

On September 22, 1981, two officers from the California Department of Fish and Game entered the Harbor Hut Restaurant for the purpose of inspecting its records relating to commercially caught fish.[2] An inspection conducted approximately four months previously revealed some unspecified reporting violations. The apparent purpose of the September 22, 1981, inspection was to determine if Harbor Hut was maintaining adequate records of commercially caught fishes. The officer entered the walk-in cold box and discovered eight (8) halibut and three (3) plastic bags containing rockfish filets. The officers requested to view Harbor Hut's records relating to the fish in question and were presented with two incomplete receipts. Harbor Hut was then cited for illegal possession of sport-caught fish in a sea food restaurant (§ 7121) and for failure to fill out receipts for fish found on the premises (§ 8011). The halibut, rockfish filets, and incomplete records were seized. At no time did the officers attempt to obtain a search warrant.

Harbor Hut moved to suppress the fish on the ground that they were seized without a warrant. (Cf., *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727].) The San Luis Obispo County Municipal Court denied the motion and Harbor Hut appealed. The Appellate Department of the San Luis Obispo County Superior Court reversed and directed that the evidence be suppressed.

---

[1]Respondent's contention that the record does not demonstrate that Harbor Hut was engaged as a wholesale fish dealer is belied by Harbor Hut's proposed statement on appeal. Moreover, we take judicial notice (Evid. Code, §§ 452 and 459) of the fact that Harbor Hut was issued a wholesale fish dealer's license.

[2]Section 8011 provides that: "Every person engaged in the business of buying, canning, curing, or preserving fish, or manufacturing meal, oil, flour, protein concentrate, animal food, or fertilizer from fish, or dealing in fish, who receives fish from fishermen, other than persons engaged in the taking, transportation, or sale of live fresh-water fish for bait, shall make a legible record in the form of a receipt in quadruplicate on forms to be furnished by the department. The receipt shall show: (a) The weight of each species of fish received. (b) The name of the fisherman. (c) The Department of Fish and Game registration number of the boat. (d) The name of the recipient. (e) The date of receipt. (f) The price paid. (g) The department origin block number where the fish were caught. (h) The type of gear used. (i) Such other statistical information as the department may require."

Our Supreme Court has recognized the importance attached to the goal of preserving and protecting this state's natural resources. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 254 [104 Cal.Rptr. 761, 502 P.2d 1049].) ■ It is beyond dispute that the State of California holds title to its tidelands and wildlife in public trust for the benefit of the people. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 416 [62 Cal.Rptr. 401, 432 P.2d 3]; *People* v. *Monterey Fish Products Co.* (1925) 195 Cal. 548 [234 P.398, 38 A.L.R. 1186]; *People* v. *California Fish Co.* (1913) 166 Cal. 576, 596-597 [138 P. 79].) The "dominant theme" of this state's obligation as trustee is its "duty to exercise continued supervision over the trust" to prevent parties from using the trust in a harmful manner. (*National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419, 437 [189 Cal.Rptr. 346, 658 P.2d 709].)

The above proposition does not, of course, mean that agents from the Department of Fish and Game may, in their efforts to preserve the environment, totally disregard the constitutional rights of its licensees. ■ The general rule is that governmental officials are required to obtain a search warrant in order to search commercial premises. (*Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307 [56 L.Ed.2d 305, 98 S.Ct. 1816] [employee working conditions]; *See* v. *Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737] [fire safety].)

In *Camara* v. *Municipal Court, supra,* 387 U.S. 523, at page 533 [18 L.Ed.2d 930, at p. 938], the court recognized that the warrant requirement may be dispensed with where "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." (See also *People* v. *Hyde* (1974) 12 Cal.3d 158, 168 [115 Cal.Rptr. 358, 524 P.2d 830].) Subsequent decisions of the Supreme Court have upheld warrantless inspections of certain "pervasively regulated" commercial enterprises. In *Colonnade Corp.* v. *United States* (1970) 397 U.S. 72, 76-77 [25 L.Ed.2d 60, 64-65, 90 S.Ct. 774], the court emphasized the long history of federal regulation and taxation of the manufacture and sale of liquor. In *United States* v. *Biswell* (1972) 406 U.S. 311, 312, fn. 1, 315-316 [32 L.Ed.2d 87, 91-92, 92 S.Ct. 1593], the court reviewed the pervasive system of regulation and reporting imposed upon gun dealers. Most recently, in *Donavan* v. *Dewey* (1981) 452 U.S. 594, 604-605 [69 L.Ed.2d 262, 272-273, 101 S.Ct. 2534], the court stressed the significance of the vast set of regulatory laws governing mining operations.

The central precept to be found in *Colonnade, Biswell,* and *Donovan* is that, in undertaking to engage in a highly regulated and licensed enterprise, the entrepreneur thereby consents to the array of regulations associated with

the trade; that is, its burden as well as its benefits. The businessman engaged in such a trade cannot but reasonably anticipate that his establishment is subject to periodic inspections undertaken to further the regulatory objective. As the court stated in *United States* v. *Biswell, supra,* 406 U.S. at page 316 [32 L.Ed.2d at page 92]: "It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this pervasively regulated business . . . , he does so with the knowledge that his records, firearms, and ammunition will be subject to effective inspection. . . . The dealer is not left to wonder about the purposes of the inspector in the limits in his task."

The *Colonnade-Biswell* warrantless inspection exception has been applied in Ninth Circuit Court of Appeals cases involving regulation of commercial fishing. (*United States* v. *Kaiyo Maruo No. 53* (9th Cir. 1983) 699 F.2d 989; *United States* v. *Raub* (9th Cir. 1980) 637 F.2d 1205, cert. den. (1980) 449 U.S. 922 [66 L.Ed.2d 150, 101, S.Ct. 322].) *Raub* and *Kaiyo Maru,* in upholding the warrantless inspection of fishing vessels, recognized the pervasive nature of regulation of commercial fishing; the strong federal interest in preserving dangerously depleted supplies of food fish; the necessity for warrantless inspections; and enforcement policy limiting the discretion of inspecting officers.

California courts have applied the *Colonnade-Biswell* rule in upholding warrantless searches of enterprises licensed and regulated under state law. In *People* v. *Firstenberg* (1979) 92 Cal.App.3d 570 [155 Cal.Rptr. 80], certiorari denied (1979) 444 U.S. 1012 [62 L.Ed.2d 641, 100 S.Ct. 660], the court permitted a warrantless health department inspection of certain business records of a licensed nursing home. Other Courts of Appeal have upheld warrantless inspections of records of a provider of health care services (*Miller* v. *Obledo* (1978) 79 Cal.App.3d 714 [145 Cal.Rptr. 140]); coin operated machines located in the recreational building of an apartment complex (*Cowing* v. *City of Torrance* (1976) 60 Cal.App.3d 757 [131 Cal.Rptr. 830, 87 A.L.R.3d 137]); records of an automotive dealership (*People* v. *Conway* (1974) 42 Cal.App.3d 875 [117 Cal.Rptr. 251]); auto repair shop (*People* v. *Grey* (1972) 23 Cal.App.3d 456 [100 Cal.Rptr. 245]; and records and premises of a liquor licensee (*People* v. *Lisner* (1967) 249 Cal.App.2d 637 [100 Cal.Rptr. 245].)

In California, the wholesale fish industry, while lacking the long history of regulation mentioned in *Colonnade,* has been highly regulated

since 1917 (see generally, div. 6, pt. 3; *Paladini* v. *Superior Court* (1918) 178 Cal. 369, 373-374 [173 P. 588].)[3] A license is required in order to deal in wholesale fish (§ 8040, subd.(a)). The wholesale fish dealer is required to maintain complete records of its purchases of fresh fish along with information concerning weight, species, and kind of gear used. (§§ 8011 and 8043.) Moreover, there is ample statutory authority granting agents of the Department of Fish and Game the right to enter to inspect the fish in stock and business records. (§§ 1006, 2012, and 7702.)

A vigorous inspection program is critical to the effective conservation of California's fisheries. To ensure the effectiveness of these inspections, it is essential that they be unannounced: records of purchases can be easily falsified, and illegally caught fish can be quickly disposed of. The wholesale fish dealer's knowledge that his records and stock can, without warning, be examined is an effective means of ensuring compliance with the applicable laws and regulations. Unannounced inspections, moreover, serve to ferret out and discipline those entities which disobey the law. Accordingly, we find that the warrant requirement would impede the "specific enforcement needs" of the statutory scheme.

Thus, the remaining question is whether the state's inspection program, in terms of certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. Harbor Hut argues that the statutes in question here are unconstitutional in that they allow "almost unbridled discretion upon executive and administrative officers." (Cf., *United States* v. *Biswell, supra,* 406 U.S. at p. 315 [32 L.Ed.2d at p. 91]; *Marshall* v. *Barlow's, Inc., supra,* 436 U.S. at p. 323 [56 L.Ed.2d at p. 317].)

The statutory scheme under review exempts dwellings from searches. (§ 1006.) Section 7702 limits the purposes of such searches to the ascertainment of fish received and an examination of records. Searches effectuated pursuant to sections 8011 and 8043 are limited to the records of fresh fish transactions. Moreover, inspections pursuant to section 8011 are expressly limited to transactions conducted six months prior to the search. (§ 8014.) The statutes permitting inspection, when viewed in their totality and in light of the laws governing the regulation of commercial fishing, lead to the inescapable conclusion that inspections by officials of the Department of Fish and Game are sufficiently circumscribed so as to satisfy the requirements of the Fourth Amendment.

---

[3]However, federal regulation of commercial fishing goes back to legislation enacted in 1793 requiring a federal license for fishing vessels. (*United States* v. *Raub, supra,* 637 F.2d at p. 1209, fn. 5.)

The decision of the Appellate Department of the Superior Court for the County of San Luis Obispo is reversed, and the matter is ordered remanded to the Municipal Court for the County of San Luis Obispo.

Stone, P. J., and Gilbert, J., concurred.