[No. E001411. Fourth Dist., Div. Two. Oct. 23, 1985.]

TANYA KIM, Plaintiff and Appellant, v.
ROBERT L. DOLCH, as Mayor, etc., Defendant and Respondent.

COUNSEL

Kraft & Hodge, Stanley W. Hodge and David Proulx for Plaintiff and Appellant.

Anthony J. Piazza, City Attorney, for Defendant and Respondent.

OPINION

**MORRIS, P. J.**—Plaintiff Tanya Kim petitioned the trial court for a writ of mandate declaring the newly enacted massage parlor ordinance of the City of Victorville to be unconstitutional. The petition for writ of mandate was denied.

On appeal plaintiff contends that the trial court erred in that: (1) the warrantless inspection clause of the massage parlor ordinance authorizes unconstitutional searches and seizures, and (2) the ordinance's requirement of separate bathroom facilities for men and women is unconstitutionally arbitrary and discriminatory.

FACTS

Plaintiff is the owner and operator of the Tokyo Spa located in Victorville, California. Defendant is the Mayor of the City of Victorville, an incorporated city located in San Bernardino County, California.

On May 15, 1984, the City of Victorville adopted ordinance number 946, entitled "An ordinance of the City of Victorville adding chapter 5.50 enti-

tled 'Massage Parlors' to Title 5 of the Victorville Municipal Code." The ordinance became effective on June 14, 1984.

The ordinance generally establishes the requirement of a permit and sets standards for massages and facilities. For purposes of this appeal, particularly relevant sections of the ordinance include the following:

"5.50.130. INSPECTION. At least twice a year an inspection of the massage parlor may be made for the purpose of determining that the provisions of this section are met. Such inspections may be made by the San Bernardino County Sheriff's Office, Building and Planning Director, and/or the License Collector of the City of Victorville or their representatives.

"5.50.100. FACILITIES. No permit to conduct a massage parlor shall be issued unless an inspection discloses that the massage parlor complies with each of the following minimum requirements:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(f) Adequate dressing and toilet facilities shall be provided for the patrons. Separate public toilets for men and women shall be provided and shall comply with all federal, state, county and city ordinances.

"5.50.160. PENALTY. Violation of any of the provisions of this chapter is punishable by fine not exceeding five-hundred dollars ($500.00) or by imprisonment in the County Jail not exceeding six (6) months or by such fine and imprisonment.

"5.50.060. [PERMIT EXPIRATION AND RENEWAL]—REVOCATION OR SUSPENSION. If any person holding a license to carry on the business of a massagist, massage technician or a massage parlor shall conduct or carry on such business contrary to the provisions of this chapter, or any other ordinance or law relating to or regulating such business, the license may be revoked. No license shall be revoked until after a hearing . . . ."

DISCUSSION

I.

Plaintiff contends that the trial court erred in holding that the warrantless inspection provision of the massage parlor ordinance did not authorize violation of the search and seizure clause of the Constitution. We disagree.

The Fourth Amendment to the United States Constitution provides that, "The right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.; see Cal. Const., art. I, § 13.) ■ The basic purpose of this amendment is to safeguard the privacy of individuals against arbitrary invasions by governmental officials. (*Camara* v. *Municipal Court* (1967) 387 U.S. 523, 528 [18 L.Ed.2d 930, 935, 87 S.Ct. 1727].)

■ The Supreme Court has established that the Fourth Amendment's prohibition against unreasonable searches and seizures applies to administrative inspections of private commercial property. (*Marshall* v. *Barlow's Inc.* (1978) 436 U.S. 307, 312 [56 L.Ed.2d 305, 311, 98 S.Ct. 1817]; *See* v. *City of Seattle* (1967) 387 U.S. 541, 543 [18 L.Ed.2d 943, 946, 87 S.Ct. 1737].) Accordingly, *Marshall, Camara* and *See* all held general legislation authorizing warrantless searches to be unconstitutional. ■ "However, unlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. See, e.g., *United States* v. *Biswell,* 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593] (1972); *Colonnade Catering Corp.* v. *United States,* 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774] (1970). The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections. *United States* v. *Biswell, supra,* 406 U.S. at 316." (*Donovan* v. *Dewey* (1981) 452 U.S. 594, 598-599, fn. omitted [69 L.Ed.2d 262, 268-269, 101 S.Ct. 2534].) Ultimately, whether a regulatory scheme that authorizes warrantless administrative searches of commercial property violates the Constitution must be analyzed "on a case-by-case basis under the general Fourth Amendment standard of reasonableness." (*See* v. *City of Seattle, supra,* 387 U.S. at p. 546 [18 L.Ed.2d at p. 948].)

■ In examining the "reasonableness" of legislation authorizing warrantless searches, an appropriate starting point is to determine whether the regulated business is one that is pervasively regulated. ■ In *People* v. *Firstenberg* (1979) 92 Cal.App.3d 570, 578-579 [155 Cal.Rptr. 80], the Second District of the California Court of Appeal held that: "It is . . . clear that there are two lines of cases and two sets of rules governing administrative searches. The first of these deals with general regulatory schemes—whether federal, state or local—which apply to all residences or all struc-

tures or all employers within the particular jurisdiction. *Camara* and *See* fall within this category, as does *Marshall*. The second line of cases involves regulatory legislation governing specific licensed industries. *Colonnade* and *Biswell* fall within this category." Where the regulatory scheme is general in nature the business owner needs the protection of a warrant because he "may have little real expectation that his business will be subject to inspection" (*Donovan* v. *Dewey, supra,* 452 U.S. at p. 601 [69 L.Ed.2d at p. 270]) and because such regulatory schemes "devolve[] almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search" (*Marshall* v. *Barlow's Inc., supra,* 436 U.S. at p. 323 [56 L.Ed.2d at pp. 317-318]).

Neither of these concerns are compelling, however, in narrowly defined and pervasively regulated industries. ■ As stated by the Supreme Court in *Donovan* v. *Dewey, supra,* 452 U.S. at pages 599-600 [69 L.Ed.2d at pages 269-270], "[T]he assurance of regularity provided by a warrant may be unnecessary under certain inspection schemes. Thus, in *Colonnade Corp.* v. *United States,* we recognized that because the alcoholic beverage industry has long been 'subject to close supervision and inspection,' Congress enjoyed 'broad power to design such powers of inspection . . . as it deems necessary to meet the evils at hand.' 397 U.S. at 76-77. Similarly, in *United States* v. *Biswell,* this Court concluded that the Gun Control Act of 1968, 18 U. S. C. § 921 *et seq.,* provided a sufficiently comprehensive and predictable inspection scheme that the warrantless inspections mandated under the statute did not violate the Fourth Amendment. After describing the strong federal interest in conducting unannounced warrantless inspections, we noted: 'It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this pervasively regulated business . . ., he does so with the knowledge that his records, firearms and ammunition will be subject to effective inspection. . . . The dealer is not left to wonder about the purposes of the inspector or the limits of his task.' 406 U.S., at 316. ■ These decisions make clear that a warrant may not be constitutionally required when Congress has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the federal regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes."

■ We find that the massage parlor industry is pervasively regulated. It has a history of regulation, albeit not as extensive as the liquor or firearms industries. (*Pollard* v. *Cockrell* (5th Cir. 1978) 578 F.2d 1002, 1014; *City of Indianapolis* v. *Wright* (1978) 267 Ind. 471 [371 N.E.2d 1298, 1302];

Annot., Regulation of Masseurs (1951) 17 A.L.R.2d 1183; but see *Hogge v. Hedrick* (E.D.Va. 1975) 391 F.Supp. 91, 99.) Moreover, the ordinance under review is comprehensive. In addition to stating that massage parlors may be inspected at least twice a year to determine that the provisions of the ordinance are being met, the ordinance sets minimum educational standards for masseurs, requires massage parlors to be licensed, establishes extensive facility and operational requirements, and provides for license revocation and criminal penalties. (Cf. *Rush* v. *Obledo* (N.D.Cal. 1981) 517 F.Supp. 905, 911, fn. 8.) As in *Donovan* v. *Dewey, supra,* 452 U.S. at page 603 [69 L.Ed.2d at page 272], "the regulation . . . is sufficiently pervasive and defined that the owner of such a facility cannot help but be aware that he 'will be subject to effective inspection.'" (Quoting *United States* v. *Biswell, supra,* 406 U.S. at p. 316 [32 L.Ed.2d at pp. 92-93].)

■ A second inquiry is whether there is a strong governmental interest in warrantless searches of the industry in question. Such governmental interest exists where the legislation reaches important ends and frequent unannounced inspections are necessary to the attainment of those ends.

Cases approving warrantless inspections generally find a substantial governmental interest in the problems to which the underlying legislation is addressed. For example, firearm inspection addresses the urgent governmental interest in minimizing violent crime (*United States* v. *Biswell, supra,* 406 U.S. at p. 315 [32 L.Ed.2d at p. 92]), mine inspection promotes the substantial governmental interest in the health and safety conditions of mines (*Donovan* v. *Dewey, supra,* 452 U.S. at p. 602 [69 L.Ed.2d at p. 271]), and inspection of wholesale fish dealers (for illegally caught fish) protects the important state interest in conserving fisheries (*People* v. *Harbor Hut Restaurant* (1983) 147 Cal.App.3d 1151, 1156 [196 Cal.Rptr. 7]). In the case of massage parlors, important governmental interests include controlling prostitution (see *Owens* v. *City of Signal Hill* (1984) 154 Cal.App.3d 123, 129 [201 Cal.Rptr. 70]), minimizing the danger of injury to a customer from an ill-trained masseuse (*id.,* at p. 128), and regulating other health and safety concerns (Annot., Regulation of Masseurs (1951) 17 A.L.R.2d 1183, 1190).

■ The further question then is whether warrantless inspections are critical to the attainment of the governmental objectives involved in licensing a particular industry. For example, in considering the warrantless inspection provision of the federal gun control act, the Supreme Court held that: "Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the

protections afforded by a warrant would be negligible." (*United States* v. *Biswell, supra,* 406 U.S. at p. 316 [32 L.Ed.2d at p. 92]; see *Donovan* v. *Dewey, supra,* 452 U.S. at p. 603 [69 L.Ed.2d at p. 271].)

In *Betchart* v. *Department of Fish & Game* (1984) 158 Cal.App.3d 1104, 1109-1110 [205 Cal.Rptr. 135], the Court of Appeal provided a more detailed factual analysis of this same point, holding as follows: "California's pervasive scheme of regulating wild game hunting would be a futile pursuit without frequent and unannounced patrols. Certain types of illegal hunting activity must be viewed on the scene; . . . Also, wild game, when reduced to possession, can easily be altered as to form and identity, concealed and moved. Of practical necessity, wardens must have the power to reasonably enter open private lands to enforce game regulations. . . . [¶] Procedural requirements for issuance of administrative inspection warrants are not compatible with enforcement of hunting regulations. Wardens would be required to locate and attempt to seek each landowner's consent prior to securing a warrant (or justify failure to do so). (Code Civ. Proc., § 1822.51.) If consent were refused, at least 24 hours notice would be required prior to execution of the warrant unless a judge found that immediate execution was reasonably necessary under the circumstances. (Code Civ. Proc., § 1822.56.) In dealing with enforcement of game regulations, this process is impractical and cannot be intended to apply to in-the-field checks by wardens." (See *People* v. *Harbor Hut Restaurant, supra,* 147 Cal.App.3d at p. 1156; *People* v. *Firstenberg, supra,* 92 Cal.App.3d at pp. 580-581.)

As in *Biswell* and *Betchart,* effective enforcement of the massage parlor ordinance in the instant case is contingent upon "unannounced, even frequent, inspections" and, correspondingly, a warrant requirement would frustrate the purposes of the ordinance. This is because important requirements of the ordinance could easily be concealed or corrected in a short time. For example, the use of unlicensed masseurs could easily go undiscovered absent unannounced and frequent inspections. Of similar nature are other provisions regarding equipment, supplies, cleanliness, sanitation, common use of towels, audiovisual recording and lighting. Such provisions are important to the governmental objectives of massage parlor ordinances.

■ A third consideration in evaluating the reasonableness of a warrantless inspection provision is whether it is narrowly tailored so that it accomplishes the governmental objectives at stake without unduly infringing upon Fourth Amendment rights, and thus provides a constitutionally adequate substitute for a warrant. (*Donovan* v. *Dewey, supra,* 452 U.S. at pp. 603-605 [69 L.Ed.2d at pp. 271-273]; *People* v. *Harbor Hut Restaurant, supra,* 147 Cal.App.3d at p. 1156.) ■ An important factor is whether "[t]he discretion of Government officials to determine what facili-

ties to search and what violations to search for is . . . directly curtailed by the regulatory scheme." (*Donovan* v. *Dewey, supra,* 452 U.S. at p. 605 [69 L.Ed.2d at p. 273]; see *People* v. *Harbor Hut Restaurant, supra.*) Only a limited right to warrantless inspection adequately replaces the warrant's function of establishing "the lawful limits of the inspector's power to search." (*Camara* v. *Municipal Court, supra,* 387 U.S. at p. 532 [18 L.Ed.2d at p. 537].)

█ In the instant case the inspection of the massage parlor may only "be made for the purpose of determining that the provisions of this section[*] are met." This is generally the type of curtailment that satisfies the requirements of the Fourth Amendment.

There are two factors bearing on the reasonableness of the ordinance that require further discussion, i.e., (1) it fails to set reasonable hours for inspection, and (2) it appears to make refusal to allow an inspection a misdemeanor, along with violation of any of the other provisions of the ordinance.

█ Although the ordinance fails to limit inspection to certain hours, we conclude that this does not affect the facial validity of the ordinance. Confronting this exact situation in *Pollard* v. *Cockrell, supra,* 578 F.2d at page 1015, the United States Court of Appeals for the Fifth Circuit held that: "Although it is conceivable that searches at certain times or with great frequency could be unreasonable, the ordinance on its face does not authorize unreasonable searches. Nor can we presume that the administrative search provisions will be unreasonably applied." █ There is an important caveat implied by *Pollard* v. *Cockrell,* however, which is that "the inspector's particular decision to enter must comply with the constitutional standard of reasonableness even if he may enter without a warrant." (*Camara* v. *Municipal Court, supra,* 387 U.S. at p. 531, fn. omitted [18 L.Ed.2d at p. 937]; see *People* v. *Firstenberg, supra,* 92 Cal.App.3d at p. 582.)

█ The provision for a criminal penalty not exceeding $500 or six months imprisonment in the county jail or both for any violation of the ordinance, including presumably the refusal to allow a warrantless inspection, presents a closer question.

Those cases which discuss warrantless inspections in the context of legislative schemes applicable to other than pervasively regulated industries

---

*"*Section* 5.50.130. INSPECTION" contains no provisions other than provisions for when, where, and by whom an inspection is allowed. Undoubtedly the framers of this ordinance intended to limit inspections to "the purpose of determining that the provisions of this [*chapter,* entitled Massage Parlors (i.e., the ordinance)] are met."

attribute importance to the criminal sanctions involved, and in partial reliance thereon have found the warrantless inspections unreasonable. (See *Camara* v. *Municipal Court, supra,* 387 U.S. at pp. 532-533 [18 L.Ed.2d at p. 937]; *Salwasser Manufacturing Co.* v. *Municipal Court* (1979) 94 Cal.App.3d 223, 231 [156 Cal.Rptr. 292].)

Although the reasoning of these cases would seem broadly applicable to the issue of reasonableness, it is clear that a different set of rules is applicable to legislative schemes involving pervasively regulated industries.

In *United States* v. *Biswell, supra,* 406 U.S. at page 315 [32 L.Ed.2d at page 92], the Supreme Court upheld the warrantless inspection clause of the Gun Control Act. Violation of any provision of the Gun Control Act is a crime. (*Id.,* at p. 315, fn. 4 [32 L.Ed.2d at p. 92].) Taking this into consideration, the court held: "Respondent's submission to *lawful* authority and his decision to step aside and permit the inspection rather than face a criminal prosecution is analogous to a householder's acquiescence in a search pursuant to a warrant when the alternative is a possible criminal prosecution for refusing entry or a forceful entry. . . . In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute." (*Id.,* at p. 315, fn. omitted [32 L.Ed.2d at p. 92].)

Likewise, in *People* v. *Firstenberg, supra,* 92 Cal.App.3d at page 581, the Second District Court of Appeal, relying on *Biswell,* rejected the contention that "section 1431 of Health and Safety Code, by making the refusal to permit [warrantless] inspection a criminal offense, precludes any consent from being voluntary." (*Id.,* at p. 575, fn. omitted.)

*Biswell* and *Firstenberg* clearly hold the imposition of criminal penalties for refusal to permit a warrantless inspection, or for any other violation of the underlying law, do not render the statute constitutionally unreasonable.

## II.

Plaintiff further contends the trial court erred in finding that the requirement of separate restrooms for men and women was constitutional. We disagree.

Violations of equal protection rights are subject to either of two tests, depending on the nature of the right infringed. If the law encroaches on a fundamental right or suspect classification, it is subject to strict scrutiny. (*Owens* v. *City of Signal Hill, supra,* 154 Cal.App.3d at pp. 127-128.)

However, when the state regulates economic and social relations, and no fundamental right or suspect classification is at issue, the law must only be rationally related to a permissible state goal. (*Ibid.*)

 "Operation of a massage business is not a fundamental right . . . . [¶] When no suspect class is involved, the [Constitution] is satisfied if the classification is rationally related to a permissible governmental purpose." (*Ibid.;* see also *Pollard* v. *Cockrell, supra,* 578 F.2d at p. 1013.) The cases cited by plaintiff are inapposite. Both *Truax* v. *Raich* (1915) 239 U.S. 33 [60 L.Ed. 131, 36 S.Ct. 7] and *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194] involve statutes that prohibited a wide range of employers from hiring aliens, a suspect class.

The ordinance in the instant case merely requires massage parlors to have separate bathroom facilities for men and women. The scope of review for this type of ordinance is quite narrow: it " 'will not be set aside if any state of facts reasonably may be conceived to justify it.' " (*Pollard* v. *Cockrell, supra,* 578 F.2d at p. 1013, quoting *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].) Here, health, safety and privacy concerns may all reasonably justify the requirement of separate bathroom facilities even if the number of women patrons and masseurs is relatively small.

DISPOSITION

The judgment denying petition for writ of mandate is affirmed.

Kaufman, J., and McDaniel, J., concurred.