[No. B048442. Second Dist., Div. Four. Dec. 27, 1990.]

LOS ANGELES CHEMICAL COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Parker, Milliken, Clark, O'Hara & Samuelian, Gary A. Meyer, Melissa M. Allain, Geragos & Geragos, Paul J. Geragos, Douglas Dalton and Robert J. Perry for Petitioners.

No appearance for Respondent.

Ira Reiner, District Attorney, George M. Palmer and Maurice H. Oppenheim, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**GEORGE, Acting P. J.**—Petitioners were charged in a felony complaint with illegal disposal of hazardous waste. The magistrate conducting the preliminary hearing granted petitioners' motion to suppress evidence and dismissed the case, but respondent superior court granted the motion of real

party in interest, the People of the State of California, for reinstatement of the complaint. (Pen. Code, § 871.5.) The preliminary hearing resumed; petitioners were held to answer, and an information was filed.

Petitioners now seek a writ of prohibition against further prosecution on the grounds that (1) the People's motion for reinstatement of the complaint was untimely, and (2) the magistrate properly had suppressed the evidence seized during a warrantless inspection conducted by officials of the Los Angeles County Department of Health Services. The People, as real party in interest, contend in response that petitioners may not seek writ review of the order reinstating the complaint, because petitioners failed to move in superior court to set aside the information. (Pen. Code, § 995.) For the reasons that follow, we deny the petition for writ of prohibition.

## PROCEDURAL HISTORY

Petitioners Los Angeles Chemical Company, Allen Klingensmith, and Ned Blaine were charged by felony complaint with five counts of illegal disposal of hazardous waste in violation of Health and Safety Code section 25189.5, subdivision (b).[1] Petitioners moved to suppress evidence pursuant to Penal Code section 1538.5. On June 14, 1989, the magistrate granted the motion to suppress evidence and dismissed the case, apparently pursuant to Penal Code section 871.

On June 29, 1989, the People filed a motion in superior court, pursuant to Penal Code section 871.5, for reinstatement of the complaint. This motion was personally served on counsel for petitioners the following day, June 30th.

On October 27, 1989, respondent superior court granted the motion for reinstatement of the complaint. The preliminary hearing was resumed and, on January 16, 1990, the magistrate held petitioners to answer. An information was filed January 19, 1990, and on February 28, 1990, petitioners filed the instant petition for writ of prohibition. (Pen. Code, § 999a.)

---

[1] Health and Safety Code section 25189.5, subdivision (b), provides: "Any person who is convicted of knowingly disposing or causing the disposal of any hazardous waste, or who reasonably should have known that he or she was disposing or causing the disposal of any hazardous waste, at a facility which does not have a permit from the [State Department of Health Services] issued pursuant to this chapter, or at any point which is not authorized according to this chapter shall, upon conviction, be punished by imprisonment in the county jail for not more than one year or by imprisonment in the state prison for 16, 24, or 36 months."

DISCUSSION

I

PETITIONERS ARE PRECLUDED FROM SEEKING WRIT REVIEW OF
THE ORDER REINSTATING THE COMPLAINT BY THEIR FAILURE TO
MOVE TO SET ASIDE THE INFORMATION FILED AFTER THE
PRELIMINARY HEARING WAS RESUMED AND THEY WERE HELD TO
ANSWER ON THE REINSTATED COMPLAINT

Penal Code section 871.5, subdivision (f), states in pertinent part: "If the motion to reinstate the complaint is granted, the defendant may seek review thereof only pursuant to Sections 995 and 999a. Such review may only be sought in the event the defendant is held to answer pursuant to Section 872." The final paragraph of section 871.5 further provides: "If the superior court grants the motion for reinstatement and orders the magistrate to issue an order of commitment, the defendant, in lieu of resumed proceedings before the magistrate, may elect to waive his or her right to be committed by a magistrate, and consent to the filing of an amended or initial information containing the reinstated charge or charges. After arraignment thereon, he or she may adopt as a motion pursuant to Section 995, the record and proceedings of the motion taken pursuant to this section and the order issued pursuant thereto, and may seek review of the order in the manner prescribed in Section 999a."[2]

■ Upon the granting of a People's motion for reinstatement of the complaint, a defendant wishing to challenge the ruling thus has two options: (1) to consent to the filing of the information and, following arraignment, treat the "record and proceedings of the motion [for reinstatement] and the order issued pursuant thereto" as a motion pursuant to Penal Code section 995, and seek review of that order by filing a petition for writ of prohibition pursuant to Penal Code section 999a, or (2) to complete the preliminary hearing; if held to answer, move to set aside the information pursuant to Penal Code section 995, and, if that motion is denied, seek review of that order by filing a petition for writ of prohibition pursuant to Penal Code section 999a.

In the present case, petitioners elected the second alternative by allowing the preliminary hearing to resume following the granting of the People's motion for reinstatement of the complaint. Petitioners were held to answer and, after an information was filed, were arraigned. Petitioners then filed

---

[2] Penal Code section 999a governs the filing of a petition for writ of prohibition for review of a ruling denying a motion to set aside an information pursuant to Penal Code section 995.

the instant petition for writ of prohibition, failing to comply with the requirement of Penal Code section 871.5, subdivision (f), that they first make a motion in the superior court, pursuant to Penal Code section 995, to set aside the information.

Petitioners contend they should not be required to bring a motion pursuant to Penal Code section 995 prior to seeking writ relief because doing so "would be tantamount to renewing a § 995 motion without showing any 'changed circumstances,'" in violation of the rule announced in *In re Kowalski* (1971) 21 Cal.App.3d 67 [98 Cal.Rptr. 444].

In *Kowalski*, the defendant's motion to set aside the indictment pursuant to Penal Code section 995 was granted and the case dismissed. Subsequently, another judge of the same court ruled that the previous order of dismissal was invalid and reset the case for trial. The Court of Appeal granted a writ of habeas corpus and ordered the defendant discharged from custody, concluding the second judge had erred in considering matters already ruled on by another judge of the same court "without any showing of changed circumstances." (21 Cal.App.3d at pp. 70-71.)

Petitioners contend the holding in *Kowalski* is applicable to the present case. A similar argument recently was rejected in *Sandco American, Inc.* v. *Notrica* (1990) 216 Cal.App.3d 1495 [265 Cal.Rptr. 587]. The trial judge in *Sandco* granted a new trial on the ground that another department of the trial court had imposed an erroneous discovery cutoff date which constituted an irregularity in the proceedings, depriving the defendant of a fair trial within the meaning of Code of Civil Procedure section 657, subdivision 1.[3] The Court of Appeal rejected the argument that the holding in *Kowalski* prohibits a trial judge from granting a new trial based upon the conclusion that a different department of the same court had made an erroneous ruling. The appellate court stated: "Section 657, subdivision 1, authorizes the trial judge to grant a new trial based on a finding of irregularity in the proceedings of 'the court.' When a trial judge acting under this statutory authority considers orders of another judge as proceedings of the court, there is no inconsistency with the general rule that jurisdiction is in the court and that the judges hold but one and the same court." (*Sandco American, Inc.* v. *Notrica, supra*, 216 Cal.App.3d at p. 1508.)

In the present case, Penal Code section 871.5 requires that if a preliminary hearing is resumed following the granting of a motion to reinstate the

---

[3] Code of Civil Procedure section 657 authorizes the trial court to grant a new trial "for any of the following causes, materially affecting the substantial rights of [the moving] party: [¶] 1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial."

complaint, a defendant who is held to answer and wishes to seek review of the order reinstating the complaint must move to set aside the indictment or information pursuant to Penal Code section 995. There is no inconsistency between this statutory requirement and the general rule prohibiting a judge from interfering with the exercise of the power of another department of the same court.

■ Several valid purposes are served by section 871.5. First, requiring the defendant to bring a motion pursuant to Penal Code section 995 under these circumstances affords the superior court an opportunity to rule on all issues involving the validity of the order holding the defendant to answer before the defendant seeks appellate review, thus eliminating the need for successive petitions for writ review. Second, the superior court is provided an opportunity to rule upon any issues raised by the admission of additional evidence at the resumed preliminary hearing, prior to review by the appellate court. Finally, the need for appellate review may be obviated altogether by the superior court's rulings on issues other than those involved in the order reinstating the complaint.

■ Penal Code section 871.5 provides that "the exclusive statutory remedy to test the propriety of [an] order of reinstatement" is a motion in the superior court to set aside the information, followed by a writ of prohibition in the appellate court. (*In re Torres* (1982) 128 Cal.App.3d 826, 829 [180 Cal.Rptr. 700]; see also *People* v. *Mimms* (1988) 204 Cal.App.3d 471, 481 [251 Cal.Rptr. 672].) Petitioners failed to comply with the requirements of section 871.5, and accordingly the petition for writ of prohibition must be denied.

Undoubtedly, petitioners now will pursue their remedy under Penal Code section 995. Therefore, for the guidance of respondent superior court in resolving the issues of first impression involved in the present case, we proceed to address the merits of petitioners' challenge to the order of reinstatement. (Cf. *In re Torres, supra,* 128 Cal.App.3d 826, 829.)

II

THE PEOPLE'S MOTION FOR REINSTATEMENT OF THE COMPLAINT
WAS TIMELY

Penal Code section 871.5, subdivision (a), states in pertinent part: "When an action is dismissed by a magistrate pursuant to Section . . . 871, . . . the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint . . . ." On June 14, 1989, the magistrate in the present case granted petitioners' motion to suppress

evidence and dismissed the complaint.[4] In a declaration filed in support of the motion to reinstate the complaint, the prosecutor stated he had telephoned an attorney representing petitioners "during the week of June 19, 1989," had told her he would be filing the motion to reinstate the complaint, and had obtained her agreement to appear in court on July 13, 1989, to set a briefing schedule. The motion for reinstatement was filed on June 29, 1989, 15 days after the dismissal, and was personally served on petitioners the following morning.

■  Petitioners contended in superior court that the motion was untimely because it was not served within 15 days of the dismissal, relying upon Code of Civil Procedure section 1005.5, which states a motion "is deemed to have been made . . . upon the due service and filing of the notice of motion," and upon the decision in *People* v. *Dianda* (1986) 178 Cal.App.3d 174, 178 [223 Cal.Rptr. 635], which held that a motion to reinstate a complaint is timely where the notice of motion has been served and filed within 15 days of the dismissal. Respondent superior court noted that "as far as the service, although technically it was a day late or morning late, counsel had been informed orally . . . and the court doesn't feel that there is any prejudice to the defense . . . ." The court ruled the motion was timely because there had been "substantial compliance" with the requirements of section 871.5. We agree.

In *Lum* v. *Mission Inn Foundation, Inc.* (1986) 180 Cal.App.3d 967 [226 Cal.Rptr. 22], the plaintiffs had filed a request for trial de novo, following mandatory arbitration, within the 20-day period then prescribed by statute and court rule but neglected to serve the defendant or file proof of service as specifically required by court rule. Counsel for the defendant, however, received actual notice of the filing of the request for trial de novo within the 20-day period, when he telephoned the court clerk upon receiving a notice of trial setting conference. The Court of Appeal ruled the request for trial de novo was effective despite the lack of service: "Where, as here, the request has been filed within the statutorily prescribed time and the adverse party has obtained within the statutory time actual notice the request was timely filed, the purpose of the proof of service requirement has been entirely fulfilled." (*Id.*, at p. 972.)

In the present case, counsel for petitioners not only were aware that the People intended to file the motion for reinstatement of the complaint, but

---

[4] The record before us does not reveal the statutory basis upon which the magistrate dismissed the complaint, but the reason for the dismissal was that the magistrate had suppressed all of the prosecution's evidence. Accordingly, we construe the order to be pursuant to Penal Code section 871, which provides for dismissal of a complaint if "there is not sufficient cause to believe the defendant guilty of a public offense . . . ."

approved the date for a court appearance concerning the motion. Additionally, the notice of motion was personally served the morning after it was filed, so petitioners received a copy no later, and almost certainly sooner, than they would have, had the motion been served by mail on the day it was filed. Petitioners do not dispute they had actual notice the motion was to be filed and do not claim they were prejudiced in any way. Under these circumstances, we conclude the motion was timely. (See also *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 649 [180 Cal.Rptr. 297, 639 P.2d 939] [" '[s]ubstantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute' " (italics in original)]; *Smith* v. *Board of Supervisors* (1989) 216 Cal.App.3d 862, 874 [265 Cal.Rptr. 466] ["[s]ubstantial compliance will suffice if the purpose of the statute is satisfied"].)

## III

### A WARRANT IS REQUIRED FOR A NONCONSENSUAL INSPECTION CONDUCTED PURSUANT TO HEALTH AND SAFETY CODE SECTION 25185

Petitioners' motion to suppress evidence was based upon the following evidence received during the preliminary hearing.

In 1985, during an annual inspection of the premises of petitioner Los Angeles Chemical Company conducted to ascertain the presence of any fire hazards, Captain Jeffrey McDonald of the Los Angeles County Fire Department spoke to petitioner Ned Blaine regarding quantities of sodium arsenite and arsenic trioxide, which were improperly stored. Because Blaine inquired whether these chemicals could be stored outdoors, McDonald contacted the Los Angeles County Department of Health Services for information. The person with whom McDonald spoke at the department of health services stated that the department wished to inspect the chemicals. McDonald telephoned Blaine and made an appointment "to meet the Health Department there on site" and view the chemicals.

On January 21, 1986, McDonald arrived at the premises of Los Angeles Chemical Company at 1:30 p.m., accompanied by Erlinda Macalintal, a hazardous material specialist for the department of health services, and her coworker Fidencio Domingo. Macalintal stated her "main purpose" in going to the premises was to assist McDonald in inspecting the storage of chemicals at the facility. The three county officials entered the premises through the front door of the main building and, in a receptionist's area, met Blaine, who stated he was the plant manager.

McDonald left, and Macalintal and Domingo interviewed Blaine for more than one hour. Blaine produced manifests for waste disposal. Macalintal, however, expected a greater number of such manifests than produced by Blaine and suspected petitioner Los Angeles Chemical Company was not complying with hazardous waste disposal laws. Macalintal and Domingo then toured the facility. Macalintal saw "[b]lue and white discoloration on the ground" in a few locations, a circumstance which led her to believe the ground likely had been contaminated, which might constitute a criminal violation. She and Domingo obtained two soil samples and left before 4:30 p.m.

Macalintal testified that on a daily basis she conducts inspections of companies involved in hazardous waste. In more than half of these inspections, she suspects criminal violations. She testified that "any violation of the code is a criminal violation."

Macalintal discussed her observations with Ken Smith, a colleague at the department of health services, informing him she suspected petitioner Los Angeles Chemical Company had violated the law. From his conversation with Macalintal, Smith believed there "possibly" could be criminal violations.

On January 23, 1986, Macalintal made an unannounced visit to the premises of petitioner Los Angeles Chemical Company, accompanied by Smith and Stan Townsend, a department of health services trainee. Macalintal testified her purpose in returning to the facility was "to complete the inspection that [she had] barely started on the 21st" but also acknowledged that "one of [her] purposes" was to determine whether her suspicions concerning criminal violations were correct. At the time of this second visit, Macalintal had not yet received any test results from the samples she had collected two days earlier.

When Macalintal and her associates arrived at Los Angeles Chemical Company on that date (January 23d), they proceeded to the main office and spoke to Blaine, stating they were conducting a "routine inspection." They toured the facility, collected numerous samples, and took photographs. During a postinspection conference, Macalintal advised officials of petitioner Los Angeles Chemical Company of the violations she had observed, prepared a written notice of violations, and set dates for compliance.

Macalintal, Smith, and Domingo returned a third time, on January 29, 1986, and collected more samples from the premises of petitioner Los Angeles Chemical Company as well as from adjoining property. Macalintal and Domingo returned again on June 4, 1986, and collected additional samples

from the premises of adjacent property owners. Macalintal also collected samples in February 1986, on May 22, 1986, and on January 27, 1987.

We begin with the familiar rules for review of an order suppressing evidence. ■ "[T]he burden is clearly upon the defendant, as moving party, to raise the issue of illegally obtained evidence. [Citation.] It has been held, however, that when a defendant raises an issue as to the illegality of an arrest or search, he makes 'a prima facie case' when he establishes that an arrest or search was made without a warrant and that 'the burden then rests upon the prosecution to show proper justification.' [Citations.] As a parallel to the requirement that a defendant state specific grounds for his suppression motion . . . , the People have been held on appellate review to the particular 'justification' or 'theory' urged by them in the trial court. [Citations.]" (*People* v. *Manning* (1973) 33 Cal.App.3d 586, 600-601 [109 Cal.Rptr. 531].)

In the present case, petitioners filed a written motion to suppress which was premised on evidence, received at the preliminary hearing, establishing that the instant searches had been conducted without a warrant. This showing was sufficient to shift the burden to the prosecution to demonstrate proper justification for those searches. The theories urged by the People in the court below, and renewed on appeal, are that (1) a warrant was not required because these were administrative inspections rather than searches, and (2) petitioners lack standing to object to the inspections or searches conducted on June 4, 1986, and January 27, 1987, because this activity was not conducted on the premises of petitioner Los Angeles Chemical Company.

■ We initially examine the theory that a warrant was unnecessary. ■ "[A]dministrative searches generally require warrants. [Citations.] . . . Except in certain carefully defined classes of cases, the nonconsensual entry and search of property are governed by the warrant requirement of the Fourth and Fourteenth Amendments." (*Michigan* v. *Clifford* (1984) 464 U.S. 287, 291-292, fn. omitted [78 L.Ed.2d 477, 483, 104 S.Ct. 641].) "If a warrant is necessary, the object of the search determines the type of warrant required. If the primary object is [for an administrative purpose], an administrative warrant will suffice . . . . [¶]If the primary object of the search is to gather evidence of criminal activity, a criminal search warrant may be obtained only on a showing of probable cause to believe that relevant evidence will be found in the place to be searched." (*Id.*, at p. 294, fn. omitted [78 L.Ed.2d at p. 484].)[5]

---

[5] Of course, a warrant is required only if the owner refuses to consent to a warrantless inspection. (*Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307, 316 [56 L.Ed.2d 305, 313-314, 98 S.Ct. 1816]; *Salwasser Manufacturing Co.* v. *Municipal Court* (1979) 94 Cal.App.3d 223, 234

■ As the United States Supreme Court observed in *Michigan* v. *Clifford, supra*, 464 U.S. 287, an exception to the warrant requirement is applicable in "carefully defined classes of cases," involving administrative searches of pervasively regulated businesses such as the liquor industry (*Colonnade Corp.* v. *United States* (1970) 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774]), firearms dealers (*United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593]), the mining industry (*Donovan* v. *Dewey* (1981) 452 U.S. 594 [69 L.Ed.2d 262, 101 S.Ct. 2534]), and automobile junkyards (*New York* v. *Burger* (1987) 482 U.S. 691 [96 L.Ed.2d 601, 107 S.Ct. 2636]). Such businesses have a lesser expectation of privacy in their commercial premises because of the "history of government oversight." (*New York* v. *Burger, supra*, 482 U.S. 691, 700 [96 L.Ed.2d at 601, 612].) A person engaged in such a business does so with the knowledge that the premises " 'will be subject to effective inspection.' " (*Id.*, at p. 701 [96 L.Ed.2d at p. 613].)

California courts have determined that pervasively regulated businesses include nursing homes (*People* v. *Firstenberg, supra*, 92 Cal.App.3d 570, 579-581), the wholesale fish industry (*People* v. *Harbor Hut Restaurant* (1983) 147 Cal.App.3d 1151, 1155-1156 [196 Cal.Rptr. 7]), massage parlors (*Kim* v. *Dolch* (1985) 173 Cal.App.3d 736, 743 [219 Cal.Rptr. 248]), and the liquor industry (*People* v. *Paulson* (1990) 216 Cal.App.3d 1480, 1484 [265 Cal.Rptr. 579]).[6] Retail automobile dealerships, by contrast, are not a pervasively regulated business. (*Terry York Imports, Inc.* v. *Department of Motor Vehicles* (1987) 197 Cal.App.3d 307, 319-320 [242 Cal.Rptr. 790].)

■ The determination whether a particular business comprises part of a pervasively regulated industry is not made in the abstract. (See *Marshall* v.

---

[156 Cal.Rptr. 292]; but see *People* v. *Firstenberg* (1979) 92 Cal.App.3d 570, 581 [155 Cal.Rptr. 80].) In the present case, the People did not, either in the superior court or in this court, raise consent as a justification for the searches. Although the superior court granted the People an opportunity to present further evidence during the motion to suppress evidence, the People presented no evidence of such consent. (*People* v. *Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 29 [175 Cal.Rptr. 257].)

Petitioners contend that the department of health services officials were required to obtain "a criminal search warrant" supported by a showing of probable cause, rather than an administrative warrant supported by a lesser showing. (See *Michigan* v. *Clifford; supra*, 464 U.S. 287, 294 [78 L.Ed.2d at pp. 484-485].) This issue is not raised by the circumstances of the present case, however, because the inspections were conducted without a warrant of either type.

[6]The decision in *Betchart* v. *Department of Fish & Game* (1984) 158 Cal.App.3d 1104, 1109 [205 Cal.Rptr. 135], discusses whether wild game hunting is closely regulated, but does so in the context of a warrantless entry into open fields. "Open field sites are regarded as so public in nature that searches are justifiable without any particular showing of cause or exigency. [Citation.]" (*Id.*, at p. 1110; *Rutherford* v. *State of California* (1987) 188 Cal.App.3d 1267, 1289 [233 Cal.Rptr. 781].) The holding in *Betchart*, therefore, is inapplicable to inspections of areas other than open fields. (158 Cal.App.3d at p. 1108.)

*Barlow's, Inc., supra,* 436 U.S. 307, 321 [56 L.Ed.2d at pp.316-317].) Rather, the particular statute authorizing the warrantless inspection at issue is examined to determine whether it satisfies the following three-part test: "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made . . . . [¶]Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' [Citation.] . . . [¶]Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.' [Citation.] In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." (*New York* v. *Burger, supra,* 482 U.S. 691, 702-703 [96 L.Ed.2d 601, 614].)

■ The People contend, as they did in the superior court, that the inspection in the present case was authorized by Health and Safety Code section 25185, subdivision (a).[7] This statute appears in an article entitled "Enforcement," which in turn is part of the chapter entitled "Hazardous Waste Control." (§ 25100 et seq.) The purpose of the chapter is to require the proper disposal of hazardous wastes. (§ 25101, subd. (a).) Section 25185, subdivision (a), authorizes department of health services inspectors to "[e]nter and inspect a factory, plant, construction site, waste disposal site, transfer station, establishment or any other place or environment where hazardous wastes are stored, handled, processed, disposed of, or being treated to recover resources."

The People's contention that section 25185 invokes the exception to the warrant requirement for pervasively regulated businesses must be rejected in light of the United States Supreme Court's holding in *Marshall* v. *Barlow's, Inc., supra,* 436 U.S. 307, prohibiting warrantless inspections for the purpose of enforcing the provisions of the Occupational Safety and Health Act of 1970 (OSHA). The OSHA provisions authorize the inspection of "any employment facility within the Act's jurisdiction," to detect safety hazards and violations of OSHA regulations. (*Id.,* at p. 309 [56 L.Ed.2d at p. 309].) As observed by the court, those cases allowing warrantless inspections of pervasively regulated businesses "represent responses to relatively unique circumstances." (*Id.,* at p. 313 [56 L.Ed.2d at pp. 311-312].) The high court declined to extend to OSHA inspections this exception to the warrant requirement, stating: "The clear import of our cases is that the closely regulated industry of the type involved in *Colonnade* and *Biswell* is

---

[7] All further statutory references are to the Health and Safety Code.

the exception. [Applying this exception to OSHA inspections] would make it the rule." (*Id.*, at p. 313 [56 L.Ed.2d at p. 312].)

The opinion in *People* v. *Firstenberg, supra,* 92 Cal.App.3d 570, 578-579, described the holding in *Marshall* v. *Barlow's, Inc.* as follows: "*Marshall* v. *Barlow's, Inc., supra,* 436 U.S. 307, unlike *Colonnade* and *Biswell,* dealt not with a regulatory scheme for a particular licensed industry, but with a statute which applies to all businesses engaged in interstate commerce . . . . [¶]It is thus clear that there are two lines of cases and two sets of rules governing administrative searches. The first of these deals with general regulatory schemes—whether federal, state, or local—which apply to all residences or all structures or all employers within the particular jurisdiction. . . . The second line of cases involves regulatory legislation governing specific licensed industries."

Section 25185, subdivision (a), is not limited to a particular industry which traditionally has been the subject of close government regulation. Instead, the statute permits an inspection of any "factory, plant, construction site, waste disposal site, transfer station, establishment or any other place or environment where hazardous wastes are stored, handled, processed, disposed of, or being treated . . . ." Section 25185, therefore, is part of a general regulatory scheme applicable to all persons and entities who generate hazardous waste; the statute does not constitute regulatory legislation governing a specific licensed industry. Under the decisions in *Marshall* v. *Barlow's, Inc.* and *People* v. *Firstenberg,* the exception to the warrant requirement applicable to pervasively regulated industries does not apply to inspections conducted pursuant to section 25185. Therefore, if consent to conduct such an inspection is refused, the rule that a warrant must be obtained applies, at least until such time as the Legislature decides to enact additional regulatory legislation authorizing warrantless searches directed specifically at industries of the type involved in the present case,[8] assuming such legislation meets the standards mandated by the United States Supreme Court in the *Berger* case. Because the department of health services inspectors had no warrant, and the People produced no evidence of consent, the magistrate did not err in granting the motion to suppress evidence seized from the premises of petitioner Los Angeles Chemical Company.

It is unnecessary for us to consider the People's additional contention that because the inspections on June 4, 1986, and January 27, 1987, were not conducted on the premises of petitioner Los Angeles Chemical Company, petitioners lack standing to object to these inspections. All the criminal

---

[8] The record before us is incomplete as to the precise nature of Los Angeles Chemical Company's operations.

violations with which petitioners are charged are alleged to have occurred on or about January 23, 1986. The inspection conducted on the latter date took place on the premises of petitioner Los Angeles Chemical Company, and the magistrate correctly suppressed the evidence obtained during that warrantless search. The suppression of this evidence would appear to require dismissal of the case, and the People do not contend otherwise. Therefore, we need not and do not determine the legality of inspections which occurred on other dates.

### DISPOSITION

The petition for writ of prohibition is denied.

Goertzen, J., and Epstein, J., concurred.