[No. A044696. First Dist., Div. Two. Jan. 4, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
LEE STEWART PAULSON, Defendant and Appellant.

**COUNSEL**

Arthur C. Lipton and David B. Harrison for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## KLINE, P. J.—

### INTRODUCTION

Lee Stewart Paulson appeals his conviction following his plea of nolo contendere to one count of possession of cocaine. (Health & Saf. Code, § 11350, subd. (a).) The court suspended imposition of sentence and placed him on probation for three years on condition he serve 90 days in the county jail. He filed a timely appeal, challenging the lawfulness of the search. Specifically, he contends that the warrantless search of his bar by an officer of the Department of Alcoholic Beverage Control (hereafter Department) exceeded the scope of administrative searches permissible under Business and Professions Code sections 25753 and 25755.[1] In the alternative, he contends those statutes are unconstitutional.

### STATEMENT OF FACTS

On February 11, 1988, an anonymous informer tipped the Department that narcotic sales were occurring on the premises of the "My House" bar in San Francisco, and that the narcotics were kept in a safe behind the bar on the premises. A month later, on March 11, 1988, Jerry Meyer, a special investigator for the Department, went to the bar during its hours of operation, entered, identified himself, telephoned appellant (the holder of the liquor license at the premises), informed appellant he was conducting an inspection, and asked appellant to provide access to a safe and locked storage facility. When appellant arrived Meyer, who did not have a search warrant, asked him to open the safe. Appellant did so. Meyer did not seek to obtain consent, although appellant did not object. Twenty-two bindles of cocaine, totaling 5.5 grams, were found in the safe.

At the suppression hearing, Meyer testified that he searched the premises solely because of the tip regarding a narcotics violation. Further, he maintained that the search was conducted under authority of Business and Professions Code sections prohibiting "any kind of illegal activity on licensed premises. . . ."

### DISCUSSION

#### I.

The Fourth Amendment's prohibition on unreasonable searches and seizures applies to commercial premises, as well as to private homes. (*New York v. Burger* (1987) 482 U.S. 691, 699 [96 L.Ed.2d 601, 612, 107 S.Ct.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

2636]; *Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307, 312 [56 L.Ed.2d 305, 311, 98 S.Ct. 1816]; *See* v. *City of Seattle* (1967) 387 U.S. 541, 543, 546 [18 L.Ed.2d 943, 946, 947-948, 87 S.Ct. 1737].) "However, unlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. See, e.g., *United States* v. *Biswell,* 406 U.S. 311 (1972); *Colonnade Catering Corp.* v. *United States,* 397 U.S. 72 (1970). The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections. *United States* v. *Biswell, supra* , at 316." (*Donovan* v. *Dewey* (1981) 452 U.S. 594, 598-599 [69 L.Ed.2d 262, 268-269, 101 S.Ct. 2534]; *Kim* v. *Dolch* (1985) 173 Cal.App.3d 736, 742 [219 Cal.Rptr. 248].)

■ The Supreme Court has recognized an exception to the warrant requirement for administrative searches of certain "closely regulated industries which, by their very nature, require unannounced visits from government agents." (*Terry York Imports, Inc.* v. *Department of Motor Vehicles* (1987) 197 Cal.App.3d 307, 319 [242 Cal.Rptr.790].)[2] As the Supreme Court observed in *Marshall* v. *Barlow's Inc., supra,* 436 U.S. 307, 313 [56 L.Ed.2d 305, 312]: "Certain industries have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." (See also, *New York* v. *Burger, supra,* 482 U.S. 691, 700 [96 L.Ed.2d at p.612].)

The liquor industry, the quintessential "closely regulated" business, provided the first opportunity for the Supreme Court to articulate the exception. In *Colonnade Corp.* v. *United States, supra,* 397 U.S. 72, the court "considered a warrantless search of a catering business pursuant to several

---

[2] Such closely regulated industries have been recognized by the Supreme Court in *Colonnade Corp.* v. *United States* (1970) 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774] (liquor licensees); *United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593] (licensed firearm dealers); *Donovan* v. *Dewey, supra,* 452 U.S. 594 (underground and surface mines); and *New York* v. *Burger, supra,* 482 U.S. 691. In California, the exception has been applied in *People* v. *Firstenberg* (1979) 92 Cal.App.3d 570 [155 Cal.Rptr. 80], certiorari denied *Firstenberg* v. *California* (1980) 444 U.S. 1012 [62 L.Ed.2d 641, 100 S.Ct. 660] (nursing homes); *Betchart* v. *Department of Fish and Game* (1984) 158 Cal.App.3d 1104 [205 Cal.Rptr. 135] (preservation of fish and game); *People* v. *Harbor Hut Restaurant* (1983) 147 Cal.App.3d 1151 [196 Cal.Rptr. 7] (wholesale fish dealers); and *Kim* v. *Dolch, supra,* 173 Cal.App.3d 736 (massage parlors). The United States Court of Appeals for the Ninth Circuit has recognized family day care homes as such an industry. (*Rush* v. *Obledo* (9th Cir. 1985) 756 F.2d 713.)

federal revenue statutes authorizing the inspection of the premises of liquor dealers. Although the court disapproved the search because the statute provided that a sanction be imposed when entry was refused, and because it did not authorize entry without a warrant as an alternative in this situation, it recognized that 'the liquor industry [was] long subject to close supervision and inspection.' *Id.,* at 77." (*New York* v. *Burger, supra,* 482 U.S. 691, 700 [96 L.Ed.2d at p. 612].) The court recognized that with respect to the liquor industry, Congress has broad authority to fashion standards of reasonableness for searches and seizures. (*Colonnade Corp.* v. *United States, supra,* 397 U.S. at p. 77 [25 L.Ed.2d at pp. 64-65].)

The closely regulated business exception, however, does not always operate to eliminate the warrant requirement. Nor is a long tradition of close government supervision a dispositive consideration in this regard. (*Donovan* v. *Dewey, supra,* 452 U.S. at p. 606 [69 L.Ed.2d at pp.273-274]; *Bionic Auto Parts and Sales, Inc.* v. *Fahner* (7th Cir. 1983) 721 F.2d 1072, 1079.) The warrantless inspection of closely regulated business premises will be deemed unreasonable unless three criteria are met. "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." (*New York* v. *Burger, supra,* 482 U.S. 691, 702 [96 L.Ed.2d at p. 614].) In *Colonnade,* for example, a substantial federal interest was identified "in protecting the revenue against various types of fraud." (397 U.S. at p. 75 [25 L.Ed.2d at p. 64].) "Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' " (*New York* v. *Burger, supra,* 482 U.S. 691, 702 [96 L.Ed.2d 601, 614], quoting *Donovan* v. *Dewey, supra,* 452 U.S., at p. 600 [69 L.Ed.2d at p. 270].) "Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [*must*] *provid[e] a constitutionally adequate substitute for a warrant.*' [*Donovan* v. *Dewey,* 452 U.S., at p. 603.] In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has *a properly defined scope, and it must limit the discretion of the inspecting officers.* [Italics added.] [Citations.] To perform this first function, the statute must be 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.' *Donovan* v. *Dewey,* 452 U.S., at 600. In addition, in defining how a statute limits the discretion of the inspectors, we have observed that *it must be 'carefully limited in time, place and scope.'* [Italics added.]" (*New York* v. *Burger, supra,* 482 U.S. 691, 703 [96 L.Ed.2d 601,614], quoting *United States* v. *Biswell, supra,* 406 U.S. at p. 315 [32 L.Ed.2d at p. 92].)

█ It is for purposes of this case important to understand that a warrantless search may be upheld even though the administrative provisions

proscribe conduct which is also criminal. In *New York* v. *Burger, supra,* 482 U.S. 691, the Supreme Court upheld the warrantless search of an automobile junkyard pursuant to a statute authorizing such inspections. The statute was clearly aimed at controlling traffic in stolen vehicles and parts. (*New York* v. *Burger, supra,* 482 U.S. 691, 708 [96 L.Ed.2d 601,617].) Concluding that the business was "closely regulated," the court found the statute satisfied the three applicable criteria and rejected the conclusion of the New York Court of Appeals that the statute violated the Fourth Amendment as it had no truly administrative purpose but was " 'designed simply to give the police an expedient means of enforcing penal sanctions for possession of stolen property.' [Citation.]" (482 U.S. at p. 698 [96 L.Ed.2d at p.611].) The Supreme Court observed that "a State can address a major social problem *both* by way of an administrative scheme *and* through penal sanctions. Administrative statutes and penal laws may have the same *ultimate* purpose of remedying the social problem, but they have different subsidiary purposes and prescribe different methods of addressing the problem. An administrative statute establishes how a particular business in a 'closely regulated' industry should be operated, setting forth rules to guide an operator's conduct of the business and allowing government officials to ensure that those rules are followed. Such a regulatory approach contrasts with that of the penal laws, a major emphasis of which is the punishment of individuals for specific acts of behavior." (482 U.S. at pp. 712-713 [96 L.Ed.2d at p. 620], italics in original.) The court declared the statute there at issue "serves the regulatory goals of seeking to ensure that vehicle dismantlers are legitimate businesspersons and that stolen vehicles and vehicle parts passing through automobile junkyards can be identified." (482 U.S. at p. 714 [96 L.Ed. 2d at p.621], fn. omitted.)[3]

■ Keeping in mind that the reasonableness of a warrantless search depends on the specific enforcement needs and privacy guaranties of the statute in question (*Marshall* v. *Barlow's, Inc., supra,* 436 U.S. at p. 321 [56 L.Ed.2d at pp. 316-317]), we turn to the California statutory scheme at issue here.

---

[3] The dissent in *Burger* warned of the dangers of such approach, fearing that it would allow the Legislature to "abrogate constitutional protections simply by saying that the purpose of an administrative search scheme is to prevent a certain type of crime." (482 U.S. 718, 728 [96 L.Ed. 2d at p. 630] [dis. opn. of Brennan, J.].) The dissent also noted that the case did not present "the more difficult question whether a State could take any criminal conduct, make it an administrative violation, and then search without probable cause for violations of the newly created administrative rule. The increasing overlap of administrative and criminal violations creates an obvious temptation for the State to do so, and plainly toleration of this type of pretextual search would allow an end-run around the protections of the Fourth Amendment." (482 U.S. 728, fn. 17 [96 L.Ed.2d at p. 630].)

## II.

### A.

The Alcoholic Beverage Control Act is contained in division 9 of the Business and Professions Code. Pursuant to section 25753, "The department may make any examination of the books and records of any licensee or other person and may visit and inspect the premises of any licensee it may deem necessary to perform its duties under this division."

Section 25755 provides in relevant part as follows: "The director and the persons employed by the department for the administration and enforcement of this division are peace officers in the enforcement of the penal provisions of this division, the rules of the department adopted under the provisions of this division, and any other penal provisions of law of this state prohibiting or regulating the sale, exposing for sale, use, possession, giving away, adulteration, dilution, misbranding or mislabeling of alcoholic beverages or intoxicating liquors, and such persons are authorized, while acting as peace officers, to enforce any penal provisions of law while they are in, on, or about any licensed premises in the course of their employment. [¶] The director, the persons employed by the department of the administration and enforcement of this division, and peace officers . . . may, in enforcing the provisions of this division, visit and inspect the premises of any licensee at any time during which the licensee is exercising the privileges authorized by his or her license on the premises."

Section 24200 sets forth the grounds upon which the Department may suspend or revoke a license. Among the grounds listed are "[w]hen the continuance of a license would be contrary to public welfare or morals" (subd. (a)) and conviction of "any public offense involving moral turpitude" (subd. (d)).

Section 24200.5, subdivision (a), which relates to mandatory revocation, provides in part that, "[n]otwithstanding the provisions of Section 24200, the department shall revoke a license . . . [i]f a retail licensee has knowingly permitted the illegal sale, or negotiations for such sales, of controlled substances or dangerous drugs upon his licensed premises."

### B.

 Appellant contends that Officer Meyer's search cannot be upheld, and the fruits thereof must be suppressed, because the search exceeded the scope of the officer's statutory authority. According to appellant, section 25755 would be constitutionally overbroad if construed to permit persons

employed by the Department to make inspections of licensed premises for the enforcement of penal laws unrelated to the central purpose of the Alcoholic Beverage Control Act. The purpose of the act, appellant emphasizes, is regulation of the sale of alcoholic beverages, not controlled substances and dangerous drugs.[4] Appellant also contends that the statutory proscription on "any public offense involving moral turpitude" does not limit the discretion of suspecting officers, as the Supreme Court has required (*New York* v. *Burger, supra*, 482 U.S. at p. 703 [96 L.Ed.2d at p. 614]) because the concept of moral turpitude "defies any attempt at a uniform and precise definition." (*Rice* v. *Alcoholic Beverage etc. Appeals Bd.* (1979) 89 Cal.App.3d 30, 36 [152 Cal.Rptr. 285].) Permitting employees of the Department to conduct warrantless searches of licensed premises for evidence of any public offense they believe involves moral turpitude, appellant argues, "devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search." (*Marshall* v. *Barlow's Inc., supra*, 436 U.S. at p. 323 [56 L.Ed.2d at pp. 317-318].)

We need not address appellant's challenge to the use of section 24200, because the Department does not attempt to justify the warrantless search of appellant's premises solely on the basis of the broad language of that statute; the Department relies as well on considerably more specific language in section 24200.5. As earlier noted, section 24200.5 provides, inter alia, that, "[n]otwithstanding the provisions of section 24200 [relating to *discretionary* suspension or revocation], the department *shall* revoke a license . . . if a retail licensee has knowingly permitted the illegal sale, or negotiations for such sales, of controlled substances or dangerous drugs upon his licensed premises." (§ 24200.5, subd. (a), italics added.)[5]

Permitting the sale of controlled substances or dangerous drugs on licensed premises (which, incidentally, has been adjudicated to involve moral turpitude (*Rice* v. *Alcoholic Beverage etc. Appeals Bd., supra*, 89 Cal.App.3d 30), is the only public offense not itself involving alcoholic beverages requiring license revocation.[6] Subdivision (a) of section 24200.5 therefore

---

[4] As used in the Alcoholic Beverage Control Act (§ 24200.5) and in this opinion, "controlled substances" has the same meaning as is given that term in article 1 (commencing with § 11000) of chapter 1 of division 10 of the Health and Safety Code, and "dangerous drugs" has the same meaning given that term in article 8 (commencing with § 4210) of chapter 9 of division 2 of the Business and Professions Code.

[5] Though the use of the word "permitted" indicates the statute may have been primarily directed to the situation in which a licensee allows others to sell controlled substances of dangerous drugs on his premises, it would be anomalous not to construe it to also include the situation in which, as here, the licensee himself carries out the proscribed illegal sales.

[6] The only other ground for mandatory revocation is "[i]f the licensee has employed or permitted any persons to solicit or encourage others, directly or indirectly, to buy them drinks in

reflects a legislative judgment that the use of licensed premises for this purpose poses a unique threat to "the safety, welfare, health, peace and morals of the people of the State" (§ 23001) that must be dealt with more vigorously than almost all other illegal acts that may take place on licensed premises. Drugs and alcohol are both intensively regulated mind-altering substances; are both subject to abuse and addictive; are both attractive to many young persons and others who frequent licensed premises; and their adverse effects are often exacerbated when they are used at or about the same time. In other words, trafficking in dangerous drugs is a particularized criminal act warranting special attention by those charged with enforcement of laws regulating the sale of alcoholic beverages. Absent the threat of mandatory revocation, the Legislature apparently reasoned, such premises would provide a tempting venue for the sale of dangerous drugs.

For the foregoing reasons, the inspection of appellant's premises advances "a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection [was] made" and therefore satisfies the first of the three applicable criteria for a warrantless search of a closely regulated business first set forth in *Donovan* v. *Dewey, supra*, 452 U.S. at page 600 [69 L.Ed.2d at pages 269-270] and most recently reaffirmed in *New York* v. *Burger, supra*, 482 U.S. at page 702 [96 L.Ed.2d at pages 613-614].

The warrantless inspection also meets the second criterion because, as the United States Supreme Court has pointed out, violations of law that can be quickly concealed, such as the sale of contraband, can only be deterred by frequent and unannounced inspections. " 'In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible.' " (*New York* v. *Burger, supra* , 482 U.S. at p. 710 [96 L.Ed.2d at p. 619], quoting *United States* v. *Biswell, supra* , 406 U.S. at p. 316 [32 L.Ed.2d at p. 92].)

The inspection satisfies the final criterion because it was authorized by statutes—sections 24200.5, 25753 and 25755—which collectively provide a " 'constitutionally adequate substitute for a warrant.' " (*New York* v. *Burger, supra*, 482 U.S. at p. 703 [96 L.Ed.2d at p. 614], quoting *Donovan* v. *Dewey, supra*, 452 U.S. at p. 603 [69 L.Ed.2d at p. 272].) That is, section 24200.5 explicitly informs a licensee that "permitt[ing] the illegal sale, or negotiations for such sales, of controlled substances or dangerous drugs upon his licensed premises" is specifically prohibited. Sections 25753 and

---

the licensed premises under any commission, percentage, salary, or other profit-sharing plan, scheme, or conspiracy." (§ 24200.5, subd. (b).)

25755 additionally advise licensees that it is the duty of the Department and its duly authorized employees to enforce that prohibition, and that such employees are authorized to act as peace officers and may "visit and inspect the premises of any licensee at any time during which the licensee is exercising the privileges authorized by his or her license on the premises." (§ 25755.) A licensee thus cannot help but be aware that his property will be subject to periodic inspections during business hours for the specific purpose of determining whether he is permitting the sale of controlled substances or dangerous drugs on his premises. (*Donovan* v. *Dewey, supra,* 452 U.S. at p. 600 [69 L.Ed.2d at pp. 269-270].) Therefore, this is not a case in which, as a condition of doing business, the state has required a blanket submission to warrantless searches at any time or for any purpose. (Compare *Finn's Liquor Shop, Inc.* v. *State Liquor Authority* (1969) 24 N.Y.2d 647, 249 N.E.2d 440, 443-445; *Washington Massage Foundation* v. *Nelson* (1976) 87 Wn.2d 948 [558 P.2d 231].) The time, place, and scope of authorized inspections adequately limit the discretion of the Department's inspectors. (*United States* v. *Biswell, supra,* 406 U.S. at p. 315 [32 L.Ed.2d at pp. 91-92].)

For the foregoing reasons, we conclude that the search in question satisfies the applicable Fourth Amendment standard of reasonableness. Accordingly, the judgment is affirmed.

Benson, J., and Peterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 29, 1990.