[No. C007052. Third Dist. June 6, 1991.]

JAY SCOTT PINNEY, Plaintiff and Respondent, v.
DAVID R. PHILLIPS, as Registrar, etc., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

**COUNSEL**

John K. Van de Kamp, Attorney General, Joel S. Primes and Constance M. Barton, Deputy Attorneys General, for Defendant and Appellant.

Livingston & Mattesich, Gene Livingston and G. Diane Colborn for Plaintiff and Respondent.

**OPINION**

**SPARKS, J.—**

In this case the Registrar of Contractors of the Contractors' State License Board (Registrar) revoked the license of an electrical contractor for failing to produce his business records after a written demand for them had been made under Business and Professions Code section 7111 (all further undesignated statutory references are to this code). This statute declares in relevant part that the "refusal by a licensee to comply with a written request of the registrar to make [his] records available for inspection constitutes a cause for disciplinary action." The contractor contends that this section cannot constitutionally authorize the inspection or production of his records without a warrant or a subpoena. Consequently, his license could not lawfully be revoked for his failure to comply with the Registrar's unconstitutional demand. The Registrar counters that this section does not require a subpoena to enforce its provisions because contractors, as a condition of their license, are required to make and keep books and records concerning their construction projects or operations, and have them available for inspection by the Registrar. The Registrar further construes this section as permitting a warrantless inspection and seeks to justify the constitutionality of this construction on the ground that the electrical contracting industry is a closely

regulated one and hence exempt from the Fourth Amendment requirement of a warrant.

We hold that the section cannot constitutionally be construed to authorize a warrantless inspection of those records or the production of them without a subpoena and an opportunity for judicial review before discipline is imposed. In light of this constitutional impediment, the discipline imposed upon the contractor cannot stand.

Plaintiff Jay Scott Pinney is a licensed electrical contractor and the owner of one electrical contracting business and the qualifying officer of another. After plaintiff and the licensed businesses failed and refused to produce all their records pertaining to construction activities after written demand, the Registrar sought to revoke their licenses under section 7111. Following a hearing, an administrative law judge found that plaintiff and the other licensees had failed to comply with the Registrar's written request for the production of those business records. Pinney's license, and all licenses for which he furnished the qualifying experience and appearance, were ordered revoked. Pinney was further prohibited from serving as an officer, partner or qualifying individual of any contractor licensee.

Pinney filed a petition for writ of administrative mandamus alleging he had complied in good faith with the Registrar's request, that the Registrar's application of section 7111 violated his Fourth Amendment right to be free of unreasonable searches and seizures, that the Registrar's finding of refusal was not supported by the evidence, and that the demand to produce the records was impermissibly indefinite. The trial court granted the petition on the ground that the Registrar's order was "unduly burdensome and oppressive and directly impacted on [Plaintiff] Pinney's basic right to practice his business or profession, denying him due process of law." Based on that finding, it ordered the Registrar to set aside its decision. The court also granted Pinney's motion requesting an award of reasonable litigation expenses pursuant to Code of Civil Procedure section 1028.5, finding the Registrar's action against Pinney was taken without substantial justification.

The Registrar appeals from the judgment and from the order awarding litigation expenses. In the unpublished portion of this opinion we consider and reject Pinney's contention that demand for all his records under the circumstances of this case violated his right to due process. In that portion we also hold that the award of attorney's fees under Code of Civil Procedure section 1028.5 must be reversed. In the published part, we hold that the Registrar could not impose discipline for Pinney's failure to produce records which had neither been subpoenaed nor seized under a warrant. Accordingly,

we shall affirm the judgment but reverse the order awarding litigation expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

Pinney, a licensed electrical contractor, is the owner of an electrical contracting business named Telco, Inc. (Telco) and the qualifying partner of another business, Weststate Electric (Weststate). Investigators for the Registrar received information from the district attorney's office that Pinney's father-in-law, Donald Virgil Tonelli, was being prosecuted for receiving stolen property and that stolen construction equipment had been used on one of Pinney's construction sites. Tonelli and Pinney were involved as owners, partners, or license qualifiers in a number of companies licensed by the Registrar. The Registrar also was aware that the Department of Housing and Urban Development had concerns regarding whether Telco and Weststate were paying their employees prevailing wages. Because of these problems, Larry McNeely, a special investigator in a unit attached to the Office of the Registrar, wanted to examine the business records and construction activities of Telco and Weststate.

As fate would have it, on August 31, 1984, Pinney went to the Contractors' State License Board to file a complaint concerning the unauthorized use of his business name, Telco. At that time, Pinney was given two letters, one pertaining to Telco and the other to Weststate, requesting that Pinney produce the business records for both companies. The two letters, dated August 31, 1984, each provided: "Pursuant to Section 7111 of the Business and Professions Code it is hereby requested that you make available all records pertaining to your construction activities. The records are to include, but not be limited to, all contracts, vouchers, payment checks, invoices, disbursements, accounts receivable and accounts payable during the period from August 1, 1981 to present. [¶] An appointment has been scheduled for you at [the Registrar's office at] 3132 Bradshaw Road, Sacramento on Monday September 10, 1984, at 10:00 a.m. to review these records. [¶] Failure to comply with this request may result in disciplinary action against your license."

At the time Pinney was served with these letters, section 7111 provided: "Failure to make and keep records showing all contracts, documents, records, receipts and disbursements by a licensee of all of his transactions as a contractor, and failure to have such records available for inspection by the registrar or duly authorized representative for a period of not less than three years after completion of any construction project or operation to which the records refer, or refusal by a licensee to comply with a written request of the

registrar to make such records available for inspection constitutes a cause for disciplinary action." [1] (Stats. 1959, ch. 98, § 1, p. 1951.)

Pinney agreed to cooperate with McNeely and provide the requested information by the date stated in the letter. On September 11th, however, McNeely received a letter dated September 10, 1984, written by David Perrault, an attorney retained by Pinney. Mr. Perrault indicated he had been unable to reach McNeely by telephone and now advised him that Pinney would not be appearing at the scheduled time. Perrault stated: "[W]e have other specialists who need to be consulted including the CPA relative to your request. Therefore, we shall not appear on September 10, 1984 but shall contact you in twenty days to set a mutually convenient time for this process. [¶] Rest assured our not appearing on September 10 is not meant to be a rejection of your request, but merely the fact that time committments [sic] and the involvements of other persons in preparing the data requested is necessary."

McNeely responded in a letter dated September 12, 1984, stating that the record request was very clear and he questioned why it was necessary for Pinney to seek the services of a bookkeeper or attorney. He further stated: "As Business and Professions Code Section 7111 requires, Mr. Pinney has subjected his license to disciplinary action." An accusation dated October 12, 1984, and an amended accusation dated August 18, 1986, were filed by the Registrar, seeking the revocation of the licenses issued to Telco, Weststate and other businesses for their failure to comply with the Registrar's request for production of records.

At the administrative hearing that followed, Perrault testified that the requested records were in two or three locations, some with Pinney and some with Pinney's accountant in Burlingame. Perrault called McNeely after September 10 seeking to limit the production request and to obtain more time to identify the records. According to McNeely, Perrault was adamant that he would not make the records available until the accountant had reviewed them and he would not give McNeely a date when the records would be produced. Perrault stated it was clear that McNeely intended to proceed with disciplinary action without giving Pinney additional time so that Perrault could familiarize himself with the issues. According to Perrault, he told McNeely he would gather the payroll/personnel records and produce them within the 20-day period indicated in his letter.

Attorney Gene Livingston testified that Perrault referred the matter to him on September 11th and told him the Registrar was insisting upon immediate

---

[1]In 1988, the statute was amended to increase the period of time during which a contractor must keep records from three to five years. The amendment also made gender-related and nonsubstantive changes. (Stats. 1988, ch. 1035, § 3.)

access to all the records, would not give him time to produce the records and was going to discipline Pinney. Livingston called McNeely to assure him that Pinney intended "to provide the records within the requirements of the law." Livingston advised McNeely that if he would tell him what the Registrar was investigating or the nature of the records that he wanted Pinney would make them available. Livingston testified he tried to get McNeely to narrow the scope of his demand as he did not think McNeely wanted him to unload a truckload of records at the Registrar's office. McNeely would not identify any particular complaint or project and insisted that all the records be produced.

At a later date which is unidentified in the record, Livingston, Pinney and Tonelli gathered a "substantial amount of records" and Livingston telephoned McNeely, advising him these records were available in Livingston's office. Livingston recalled the records included contracts, the check registers for the two companies, and project files containing invoices, statements and change orders. According to Livingston, he offered to provide additional records to McNeely if he would identify what he wanted. McNeely told Livingston he did not need anything else as he had already obtained missing information from other sources.

McNeely testified that Pinney never produced records pertaining to disbursements made by Telco to a firm called Speed and Electric for the purpose of funding the payroll of employees of both Telco and Weststate. McNeely obtained these records from Speed and Electric. Livingston testified he did not make any payroll records available to McNeely. He further stated that his best recollection was that Telco had only two employees who received a monthly salary. Telco subcontracted the rest of its labor from Weststate or Speed and Electric. It was Livingston's recollection that to the extent payroll records existed, Speed and Electric would have them.

It was Pinney's position that his Fourth Amendment rights were violated in that he was deprived of the safeguard of prior judicial review of the reasonableness of the Registrar's request and the request was unreasonable, overly broad and was in the nature of a general search. Pinney also alleged he had not refused to produce records, but had merely provided them at a later date. There was no argument that any of the requested documents were privileged or that the 10-day period of time Pinney had been given to produce the records was inadequate.

The Registrar asserted that Livingston screened the records prior to making them available and that Pinney never provided all of the pertinent records. The Registrar also argued that the requested records were adequately defined and that prior judicial review of the request's reasonableness

was not necessary in the case of a closely regulated industry. According to the Registrar, Pinney was not given additional time to produce the records because it was believed this would enable Pinney to purge, sanitize and fabricate the records. The Registrar introduced evidence that Pinney's father-in-law had attempted to induce an ex-employee to create some records and had attempted to prevent records from being given to the Registrar.

The administrative law judge found that Telco and Weststate had failed and refused to make all of the records pertaining to their construction activities available for inspection in response to the Registrar's written demand. The administrative law judge also found that the 10-day notice provided by the Registrar's letter was adequate to gather and produce the requested records and that the scope of the request was reasonable. Furthermore, Pinney was aware that his property would be subject to periodic inspections undertaken for specific purposes pursuant to section 7111 and consequently Pinney's Fourth Amendment rights were not violated. Pinney's refusal to comply with the written request was serious misconduct which went to the heart of the Registrar's enforcement procedures and evidenced a lack of fitness to continue as a licensed contractor or qualifying individual.

Based on these findings the administrative law judge revoked Telco's license, Weststate's license, all licenses in Pinney's name and further ordered that Pinney be prohibited from serving as an officer, director, associate, partner or qualifying individual of any licensee, and that any licensee which employed, elected or associated Pinney would be subject to disciplinary action. The decision of the administrative law judge was adopted by the Registrar.

Thereafter, Pinney filed a petition for writ of administrative mandamus in the superior court seeking to set aside the Registrar's decision on the ground that Pinney had complied with the Registrar's demand in good faith. He also reiterated his argument that his Fourth Amendment rights had been violated in that he had not been afforded prior judicial review of the reasonableness of the Registrar's request or of the relevancy of the specified documents. Instead, Pinney had been subjected to the unbridled discretion of the Registrar.

The trial court found that the decision to revoke Pinney's licenses was premised upon a finding that the 10-day notice provided by the Registrar was adequate. In the view of the court, the 10-day period was inadequate as a matter of fact and law and deprived Pinney of procedural due process. The court also found, apparently in response to Pinney's Fourth Amendment claim, that section 7111 as applied gave the Registrar unbridled discretion to

set the procedural rules which govern the enforcement of its provisions. The court noted that no reason was given for the demand and therefore there was no basis for determining if the records were relevant and material to the issues involved. The court granted the petition and ordered the Registrar to vacate its decision. This appeal by the Registrar followed.

DISCUSSION

I

DUE PROCESS*

. . . . . . . . . . . . . . . . . . . . . . . . .

II

FOURTH AMENDMENT

The Registrar contends Pinney's Fourth Amendment right to be free of unreasonable searches was not violated by his demand for the records. His argument is twofold. He first contends that no warrant was required to inspect the records because the electrical contracting industry falls within the closely regulated business exception to the Fourth Amendment's warrant requirement. "By accepting a license in a closely regulated industry such a[s] contracting, there is an implied consent that a contractor will comply with the requirements of the Contractors License Law. This includes the requirement of Section 7111 that books and records for all transactions as a contractor be available for inspection for three years." He next argues that "Section 7111 does not require a subpena to enforce its provisions because it is a condition of licensure of contractors that they make and keep books and records concerning their construction projects or operations, and have them available for inspection by the [Registrar]." Because the records may be inspected without legal process, a licensee may be compelled, according to the Registrar, to produce them without a warrant or a subpoena. Consequently, the failure to produce them constitutes grounds of discipline under section 7111.

Pinney counters that the electrical contracting business does not fall within the pervasively regulated industry exception. The inspection of his business records is therefore subject to the requirements of the Fourth Amendment. Since the records were not subject to a warrantless inspection, their production could otherwise be compelled only by virtue of a subpoena.

*See footnote, *ante*, page 1570.

In his view, the Fourth Amendment provides safeguards for businesses subjected to administrative demands for records. "Those safeguards, missing in the instant case, include specification of the records demanded and the right to judicial review of the demand. Those safeguards are contained in California's administrative subpoena law." (See Gov. Code, § 11180 et seq.)

## A.

We turn first to the claim that the records in question are subject to inspection without a warrant.

■ "The inspection of business premises and operations," a noted commentator has observed, "is commonplace in our society. Virtually all businesses, without regard to their character, are subject to inspection of their premises to ensure compliance with fire, health and safety regulations. In addition, businesses of particular types are subject to inspection of business records required by law to be kept and of the materials used or produced in their operation . . . . [¶] The concern . . . is with the extent to which the Fourth Amendment limits the manner in which such inspection programs may be conducted." (3 LaFave, Search & Seizure, *supra*, Inspections of Businesses, § 10.2, at pp. 629-630, fns. omitted. See also 1 Ogden, Cal. Public Agency Practice (1990) Agency Inspection Powers, § 11.01[1], pp. 11-2-11-3, fns. omitted.) We begin our analysis with an overview of the Fourth Amendment restrictions on warrantless inspections of businesses and their records.

■ The Supreme Court of the United States "long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as private homes. An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable. This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes. An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home."[2] (*New York v. Burger* (1987) 482 U.S. 691, 699-700 [96 L.Ed.2d 601, 612, 107 S.Ct. 2636], citations omitted.) Thus, "unlike searches of private homes, which

---

[2]The history of the high court's evolving recognition of the Fourth Amendment constraints on warrantless administrative searches is traced in 3 LaFave, Search and Seizure (2d ed. 1987) Inspections of Businesses, section 10.2, pages 629-635. (See also *Los Angeles Chemical Co.* v. *Superior Court* (1990) 226 Cal.App.3d 703, 716 [276 Cal.Rptr. 647]; *People* v. *Firstenberg* (1979) 92 Cal.App.3d 570, 576-578 [155 Cal.Rptr. 80]; Note, *The "Administrative" Search from Dewey to Burger: Dismantling the Fourth Amendment* (1989) 16 Hastings

generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment." (*Donovan* v. *Dewey* (1981) 452 U.S. 594, 598 [69 L.Ed.2d 262, 268, 101 S.Ct. 2534].)

Nevertheless, "administrative searches generally require warrants. . . . Except in certain carefully defined classes of cases, the nonconsensual entry and search of property are governed by the warrant requirement of the Fourth and Fourteenth Amendments." (*Michigan* v. *Clifford* (1984) 464 U.S. 287, 291-292 [78 L.Ed.2d 477, 483, 104 S.Ct. 641], fn. & citations omitted.) One of those carefully defined classes of cases is comprised of what has become known as the "closely regulated" business exception. This exception traces its lineage to the high court's decisions in *Colonnade Corp.* v. *United States* (1970) 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774], involving federal revenue statutes authorizing the warrantless inspection of the premises of liquor dealers, and in *United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593], involving a warrantless inspection of premises of a pawnshop operator federally licensed to sell sporting weapons. "The 'Colonnade-Biswell' doctrine [posits] the reduced expectation of privacy by an owner of commercial premises in a 'closely regulated' industry, . . ." (*New York* v. *Burger, supra*, 482 U.S. at p. 701 [96 L.Ed.2d 601, 613].) Thus, the expectation of privacy "is particularly attenuated in commercial property employed in 'closely regulated' industries. . . . 'Certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise.'" (*Id.* at p. 700 [96 L.Ed.2d at p. 612], citation omitted.) When this exception applies, a statutory scheme authorizing the warrantless inspection of commercial premises may pass constitutional muster. "Because the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application in this context. Rather, we conclude that, as in other situations of 'special need,' where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." (*Id.* at p. 702 [96 L.Ed.2d at pp. 613-614], citations omitted.)

█ But the closely regulated business exception does not always operate to eliminate the warrant requirement. "This warrantless inspection, however,

Const.L.Q. 261; Kress & Iannelli, *Administrative Search and Seizure: Whither the Warrant?* (1986) 31 Vill. L. Rev. 705.)

even in the context of a pervasively regulated business, will be deemed reasonable only so long as three criteria are met. First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made. . . . [¶] Second, the warrantless inspection must be 'necessary to further [the] regulatory scheme.' . . . [¶] Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.' In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. . . ." (482 U.S. at pp. 702-703 [96 L.Ed.2d at p. 614], citations omitted. See also *People* v. *Paulson* (1990) 216 Cal.App.3d 1480, 1485 [265 Cal.Rptr. 579].)

We disagree with the Registrar's assessment that Pinney's business is a pervasively regulated one. ■■■ A closely regulated business is one where the pervasiveness and regularity of the government's regulation reduces the owner's expectation of privacy in his business records. (*New York* v. *Burger, supra,* 482 U.S. at pp. 700-701 [96 L.Ed.2d at pp. 612-613].) The duration of a particular regulatory scheme is an important factor, but it is not always essential that there be a long-standing history of regulation. (*Id.* at p. 705, [96 L.Ed.2d at p. 616]; *Donovan* v. *Dewey, supra,* 452 U.S. at p. 606 [69 L.Ed.2d at pp. 273-274].)

■■■ Although statutes governing contractors were first enacted over 60 years ago in 1929 (see Stats. 1929, ch. 791, §§ 1-14, pp. 1591-1595, repealed and reenacted by Stats. 1939, ch. 37, §§ 1-2, pp. 381-395) and there are a large number of statutory provisions prohibiting or mandating certain conduct by contractors (see §§ 7025-7161), we do not find the contracting industry to be a closely regulated one. Our review of cases holding various industries to be pervasively regulated discloses that all of them concern licensed businesses engaged in activities which have a high risk of illegal conduct or of serious danger to the public such that frequent, unannounced inspections are essential for the protection of the public or for the enforcement of the statutory purpose. (See, e.g., *New York* v. *Burger, supra,* 482 U.S. 691 [96 L.Ed.2d 601] [automobile junkyard vehicle dismantling industry]; *Donovan* v. *Dewey, supra,* 452 U.S. 594 [69 L.Ed.2d 262] [underground and surface mines]; *United States* v. *Biswell, supra,* 406 U.S. 311 [32 L.Ed.2d 87] (firearms); *Colonnade Corp.* v. *United States, supra,* 397 U.S. 72 [25 L.Ed.2d 60] [liquor]; *People* v. *Paulson, supra,* 216 Cal.App.3d 1480 [liquor]; *Kim* v. *Dolch* (1985) 173 Cal.App.3d 736 [219 Cal.Rptr. 248] [massage parlor]; *Betchart* v. *Department of Fish & Game* (1984) 158 Cal.App.3d 1104 [205 Cal.Rptr. 135] [preservation of fish and game]; *People* v. *Harbor Hut*

*Restaurant* (1983) 147 Cal.App.3d 1151 [196 Cal.Rptr. 7] [wholesale fish dealers]; *People* v. *Firstenberg, supra,* 92 Cal.App.3d 570 [nursing home]; *Miller* v. *Obledo* (1978) 79 Cal.App.3d 714 [145 Cal.Rptr. 140] [health care provider]; *People* v. *Grey* (1972) 23 Cal.App.3d 456 [100 Cal.Rptr. 245] [automobile repair shop]; *People* v. *Lisner* (1967) 249 Cal.App.2d 637 [57 Cal.Rptr. 674] [liquor].)

■ These exceptions for heavily regulated businesses are just that: exceptions. (*Marshall* v. *Barlow's Inc.* (1978) 436 U.S. 307, 313 [56 L.Ed.2d 305, 311-312, 98 S.Ct. 1816].) They involve "licensed businesses engaged in activities which have a high risk of illegal conduct or of serious danger to the public." (*Currier* v. *City of Pasadena* (1975) 48 Cal.App.3d 810, 814 [121 Cal.Rptr. 913]; see also *People* v. *Hutchings* (1977) 69 Cal.App.3d Supp. 33, 36 [138 Cal.Rptr. 584] ["A warrantless search is permitted in those instances . . . where it is necessary to regulate businesses that are likely to give rise to public danger or well known evils"] citations omitted.) ■ But contractors in general and electrical contractors in particular are not engaged in any such activities. Nor can they fairly be classified as "closely regulated." The only real regulation even remotely dealing with a potential invasion of privacy by governmental agents is the very records-inspection statute at issue. This single statutory provision hardly adds up to a heavily regulated industry. As the Court of Appeal noted when construing a different inspection provision,[3] the statute before that court "is not limited to a particular industry which traditionally has been the subject of close government regulation." (*Los Angeles Chemical Co.* v. *Superior Court, supra,* 226 Cal.App.3d at p. 718.) Consequently, "the exception to the warrant requirement applicable to pervasively regulated industries does not apply to inspections conducted pursuant to [the statute]. Therefore, if consent to conduct such an inspection is refused, the rule that a warrant must be obtained applies, at least until such time as the Legislature decides to enact additional regulatory legislation authorizing warrantless searches directed specifically at industries of the type involved in the present case, assuming such legislation meets the standards mandated by the United States Supreme Court in the *Berger* case." (*Id.* at p. 718, fn. omitted.)

■ As we have noted, the theory of the closely regulated business exception is that inspection and visitation by agents of the government under the regulations are so regular and frequent that the licensee has no

---

[3]The statute involved in that case was Health and Safety Code section 25185. In relevant part, this statute permitted any authorized representative of the state Department of Health Services or of the local health officer, at any reasonable hour of the day, to "[e]nter and inspect a factory, plant, construction site, waste disposal site, transfer station, establishment or any other place or environment where hazardous wastes are stored, handled, processed, disposed of, or being treated to recover resources." (Health & Saf. Code, § 25185, subd. (a).)

reasonable expectation of privacy. In the words of the California Supreme Court, "[s]ome industries are so heavily regulated that government inspections are held constitutionally permissible, without notice, warrant, or individualized suspicion of wrongdoing. Business owners in the heavily regulated industries are presumed to know that they are subject to the periodic inspections which are specified by and regularly carried out pursuant to enabling legislation." (*Ingersoll* v. *Palmer* (1987) 43 Cal.3d 1321, 1332-1333 [241 Cal.Rptr. 42, 743 P.2d 1299], citations omitted.) But that theory has no application to ordinary contractors in California. Indeed, if electrical contracting is a closely regulated industry, then all licensed businesses in California would fall within the exception and the exception would swallow the rule.

■ The Registrar has failed to demonstrate that the requisite pervasiveness and regularity of the regulations are associated with the contracting industry. He merely asserts that the Contractors' State License Law (§ 7000 et seq.) was enacted to protect the public against the perils of contracting with dishonest or incompetent contractors and to prevent fraudulent acts by contractors resulting in loss to subcontractors, materialmen, employees, and owners of structures. (*Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 606 [770 P.2d 732]; *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 149-150 [308 P.2d 713]; *Johnson* v. *Mattox* (1968) 257 Cal.App.2d 714, 718 [65 Cal.Rptr. 185]; *People* v. *Vis* (1966) 243 Cal.App.2d 549, 555 [52 Cal.Rptr. 527].) This is not sufficient. (See, e.g., *Terry York Imports, Inc.* v. *Department of Motor Vehicles* (1987) 197 Cal.App.3d 307, 313, 319-320 [242 Cal.Rptr. 790].) Arguably, substantially all laws licensing businesses or professions were enacted to protect the public from dishonest and incompetent people engaging in the licensed activity. Yet all such licensed businesses or professions may not be considered pervasively regulated or the closely regulated business exception to the warrant requirement would no longer be the exception but the rule. As the Ninth Circuit Court of Appeals has warned, "[w]e cannot stress forcibly enough that there is no basis for applying the 'pervasively regulated business' exception to the warrant requirement merely because a business conducted in a home or elsewhere requires a license. For this exception to apply, the environment in which the licensed business is conducted must be pervasively regulated and an urgent governmental interest must be furthered by warrantless inspections." (*Rush* v. *Obledo* (9th Cir. 1985) 756 F.2d 713, 722.) We find no such urgent governmental interest in the present case.

But even if the contracting industry could somehow be classified as a closely regulated business, none of the three indispensable criteria has been met. (*New York* v. *Burger, supra,* 482 U.S. at p. 702 [96 L.Ed.2d at p. 614].) First, there is nothing peculiar about the contracting business such that

warrantless inspections of business premises for records would advance any substantial government interest. As will be seen, these records may be obtained pursuant to a subpoena should the contractor decline to consent to their voluntary inspection. A warrantless inspection of the contractor's records would also not meet the second criterion as being necessary to further the regulatory scheme. The violation of a contractor's duty to maintain records is not something that can be deterred only by frequent and unannounced inspections. (Cf. *People* v. *Paulson, supra,* 216 Cal.App.3d at p. 1489.) Finally, there is nothing in " 'the statute's inspection program, in terms of the certainty and regularity of its application, [which] provid[es] a constitutionally adequate substitute for a warrant.' " (*New York* v. *Burger, supra,* 482 U.S. at p. 703 [96 L.Ed.2d at p. 614].)

In his reply brief the Registrar claims that "the Fourth Amendment simply is not applicable to this case because [his] request to inspect records was neither a search nor a seizure. [The Registrar] did not intrude into Pinney's place of business, seize or attempt to seize his papers. Pinney voluntarily went to the [Registrar's] office where the request was served; Pinney was asked to bring his books and records to the [Registrar's] office for inspection." While true, this assertion misses the point. Pinney was disciplined because he failed to produce his records after the Registrar's written demand. In order to discipline Pinney for that failure the Registrar was required to establish that he was legally and constitutionally authorized to compel the production of those records without a warrant or a subpoena. In its most distilled form, the Registrar's argument is that since a warrantless search of the records is proper, the less intrusive act of compelling the production for their inspection must a fortiori pass constitutional muster. That argument must fail in light of our conclusion that the electrical contracting industry is not a closely regulated one for purposes of the Fourth Amendment. That exception therefore does not justify the compulsory production of contractors' records without legal process.

### B.

■ We consider next the Registrar's claim that a licensee may be ordered to produce his records without a subpoena. It has been observed that "subpoenas have been treated as constructive searches within the meaning of the Fourth Amendment ever since that provision was first judicially construed." (*California Restaurant Assn.* v. *Henning* (1985) 173 Cal.App.3d 1069, 1075 [219 Cal.Rptr. 630].) ■ Nevertheless, it is now settled that judicial enforcement of a subpoena is constitutionally permissible under a standard less exacting than that required for a search in a criminal prosecution. "[I]t was once assumed that the compulsory production of records was a 'search and seizure' in the literal Fourth Amendment sense and that

subpenas, like warrants, were enforceable only if issued pursuant to a formal 'complaint' or at least upon probable cause to suspect 'a specific breach of the law.' [¶] However, it is now clear that such a restrictive view of the administrative process is not constitutionally compelled. As regulatory schemes have become increasingly important in enforcing law designed to protect the public's health and welfare, reliance on 'probable cause' as a means of restraining agency subpena power has all but disappeared." (*Craib* v. *Bulmash* (1989) 49 Cal.3d 475, 481 [261 Cal.Rptr. 686, 777 P.2d 1120], citations omitted.) Instead, as the *Craib* court explained it, the United States Supreme Court in *Okla. Press Pub. Co.* v. *Walling* (1946) 327 U.S. 186 [90 L.Ed. 614, 66 S.Ct. 494, 166 A.L.R. 531], "articulated a test which applied Fourth Amendment requirements only by analogy. The notion that a subpena could be enforced only where a specific charge or complaint is pending was explicitly rejected. Instead, said the court, the investigation need only be for 'a *lawfully authorized purpose*, within the power of [the legislative body] to command.' In addition, the requirement of '"probable cause, supported by oath or affirmation," literally applicable in the case of a warrant,' is satisfied as long as the subpenaed documents are 'relevant' to the inquiry. 'Beyond this the requirement of reasonableness, including particularity in "describing the place to be searched, and the persons or things to be seized," also literally applicable to warrants, comes down to *specification of the documents to be produced adequate, but not excessive*, for the purposes of the relevant inquiry.' " (*Craib* v. *Bulmarsh, supra*, 49 Cal.3d at p. 482, citation omitted & italics in original.) In sum, the "Fourth Amendment is satisfied if the subpoena (1) relates to an inquiry which the administrative agency is authorized to make; (2) seeks information reasonably relevant to that inquiry; and (3) is not too indefinite." (*California Restaurant Assn.* v. *Henning, supra*, 173 Cal.App.3d at p. 1075.)

To these three requirements the United States Supreme Court has added a fourth: the subpoenaed party must be accorded an opportunity for judicial review before suffering any penalties for refusing to comply. (*See* v. *City of Seattle* (1967) 387 U.S. 541, 544-545 [18 L.Ed.2d 943, 946-947, 87 S.Ct. 1737].) In *See* the high court stressed that "while the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply. [¶] It is these rather minimal limitations on administrative action which we think are constitutionally required in the case of investigative entry upon commercial establishments." (*Id.* at pp. 544-545 [18 L.Ed.2d at p. 947].) In other words, the "Fourth Amendment also requires that there exist a mechanism by which validation, modification, or nullification of the subpoena can be judicially resolved,

without penalty, before compliance with the subpoena can be exacted." (*California Restaurant Assn.* v. *Henning, supra,* 173 Cal.App.3d 1069, 1075; see also *People* v. *Hutchings, supra,* 69 Cal.App.3d Supp. 33, 36.)

Thus, the safeguard of prior judicial review is essential to the constitutionality of constructive searches made under the auspice of a subpoena. As stated in *California Restaurant Assn.* v. *Henning, supra,* 173 Cal.App.3d 1069, "[t]he availability of a judicial forum for determining the validity of an administrative subpoena can, without detracting from the agency's power to function, protect 'the interests of men to be free from officious intermeddling, whether because irrelevant to any lawful purpose or because unauthorized by law, concerning matters which on proper occasion and within lawfully conferred authority of broad limits are subject to public examination in the public interest. Officious examination can be expensive, so much so that it eats up men's substance. It can be time consuming, clogging the processes of business. It can become persecution when carried beyond reason.' " (*Id.* at p. 1076, quoting *Okla. Press Pub. Co., supra,* 327 U.S. at p. 213 [90 L.Ed. at p. 632.].)

 Relying on *California Restaurant Assn.* v. *Henning, supra,* 173 Cal.App.3d 1069 and *People* v. *Hutchings, supra,* 69 Cal.App.3d Supp. 33, Pinney asserts that section 7111 is defective because it does not provide a mechanism by which a request for documents can be judicially reviewed, without penalty, before compliance with a production request can be exacted. The Registrar responds that no prior judicial review is required because, unlike the cited cases, this case involves a closely regulated industry. We have already rejected that claim in the context of warrantless inspections and reject it here for the same reasons.

Moreover, it does not appear to us that section 7111 is a production or subpoena duces tecum statute. In relevant part this statute declares that a "refusal by a licensee to comply with a written request of the registrar to make such records available for inspection constitutes a cause for disciplinary action." Making records available for inspection upon request is not the same thing as requiring them to be delivered to the Office of the Registrar in Sacramento. If this statute does not compel production of records (as we think it does not), then the Registrar would be required to use the provisions of Government Code section 11180 et seq. Section 11181 of that code authorizes a department head to "Issue subpenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing or proceeding pertinent or material thereto in any part of the State." (Gov. Code, § 11181, subd. (e).) But this code ensures that the licensee will have an opportunity for judicial

review before sanctions are imposed for noncompliance. Under section 11187 of the Government Code, if the licensee refuses to produce the subpoenaed papers, the department may seek a judicial order "compelling the person to attend and testify or produce the papers required by the subpena before the officer named in the subpena." This opportunity of prior judicial review is critical to the constitutionality of an administrative subpoena statute. Thus, even if Business and Professions Code section 7111 could be construed as a subpoena duces tecum statute, it must contain some mechanism for judicial review in order to pass constitutional muster.

█ Since the Registrar did not subpoena the disputed records under Government Code section 11181 and because those records are not subject to a warrantless inspection, he had no legal right to demand their production. As our Supreme Court ruled more than 20 years ago: "Of course, department heads cannot compel the production of evidence in disregard of the . . . constitutional provisions prohibiting unreasonable searches and seizures." (*Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462].) Nor can they revoke a person's license for failing to comply with such an unconstitutional demand.

In light of this holding, we have no occasion to declare section 7111 unconstitutional. Indeed, Pinney seeks no such declaration. As his counsel notes, "Pinney urges this court to declare the demands served on him and the Registrar's interpretation of Section 7111 as applied to him to be constitutionally invalid. However, if Section 7111 is read in conjunction with Government Code Sections 11180 and following, perhaps its facial validity can be upheld." We agree. █ As is the case with all courts, we are enjoined to construe statutes so as to uphold their constitutionality wherever possible. "It is a familiar rule of construction that statutes should be interpreted in a manner which avoids constitutional difficulties." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 466 [253 Cal.Rptr. 236, 763 P.2d 1326].) "Thus, wherever possible, we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute." (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].) █ █ █ We do so in this case by holding that section 7111 constitutionally cannot be construed to permit a warrantless inspection or the production of records without a subpoena. Instead, section 7111 must be read in light of and in harmony with the Fourth Amendment and with the administrative subpoena statutes and the inspection warrant statutes.[4] As so harmonized, section 7111 permits the Registrar to inspect the records of

---

[4]An inspection warrant "is an order, in writing, in the name of the people, signed by a judge of a court of record, directed to a state or local official, commanding him to conduct any inspection required or authorized by state or local law or regulation relating to building, fire,

licensees either with their consent or by the use of a subpoena or by a search or inspection warrant. Once those constitutional safeguards have been observed, a contractor may lawfully be disciplined for his failure to make and keep records and have them available for inspection as required by section 7111.

Although the trial court set aside the revocation for the wrong reason, its action was legally correct and therefore is entitled to be affirmed. ▮ Where, as here, the trial court reached the proper decision, it is of no consequence that the theory on which the court reached its conclusion may have been flawed. (*Davis* v. *Municipal Court* (1988) 46 Cal.3d 64, 72 [249 Cal.Rptr. 300, 757 P.2d 11], fn. 3.) As Witkin put it, "[i]f the decision of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion. Two theories seem to be involved here: First, that the appellate court reviews the action of the lower court and not the reasons for its actions; second, that there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266, italics omitted.) Accordingly, we shall uphold the granting of the writ of mandate.

III

LITIGATION EXPENSES*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The order directing the Registrar to pay Pinney's litigation expenses under Code of Civil Procedure section 1028.5 is reversed. The judgment granting

safety, plumbing, electrical, health, labor, or zoning." (Code Civ. Proc., § 1822.50.) It may issue upon cause shown that "either reasonable legislative or adminstrative standards for conducting a routine or area inspection are satisfied with respect to the particular place, dwelling, structure, premises, or vehicle, or there is reason to believe that a condition of nonconformity exists with respect to the particular place, dwelling, structure, premises, or vehicle." (Code Civ. Proc., § 1822.52.)

Although it has been held that the inspection warrant statute "has no applicability to inspections of licensed businesses which are governed by the rules enunciated in *Colonnade* [*Corp.* v. *United States* (1970)] 397 U.S. 72, and [*United States* v.] *Biswell* [(1972)] 406 U.S. 311" (*People* v. *Firstenberg, supra*, 92 Cal.App.3d at p. 583), those rules apply only to industries which fall within the "closely regulated" business exception. Consequently, when the terms of this statute are met, inspection warrants may issue for businesses which do not come within that exception.

*See footnote, *ante*, page 1570.

Pinney's petition for a writ of mandate is affirmed. Each party shall bear his/its own costs on appeal.

Puglia, P. J., concurred. Marler, J., concurred in the result.

Appellant's petition for review by the Supreme Court was denied September 5, 1991. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.